Peter **BEATHARD et al., Plaintiffs,**

v.

**CHICAGO FOOTBALL CLUB, INC.,
et al., Defendants.**

**No. 75 C 3339.**

United States District Court,
N. D. Illinois, E. D.

Aug. 30, 1976.

---

paid in 18 installments—one after each game then scheduled to be played by the Club. For reasons which are now obvious, plaintiffs were concerned with the possibility that the Club or the WFL would not succeed, and they would not be paid their salaries. Accordingly, each contract contained a provision obligating the Club to either pay into escrow at an established bank of the Club's choice the amount of the player's 1975 compensation, or to secure a "domestic letter of credit" in that amount.

The Club elected to obtain letters of credit. On August 15, 1975, the Mid-City National Bank issued "Domestic Letter of Credit No. 160" to Beathard and "Domestic Letter of Credit No. 161" to Jameson.

Beathard's letter was as follows:

*"Domestic Letter of Credit No. 160*

Date: August 15, 1975

"Amount: $70,000.00

"Mr. Peter Beathard

"Dear Mr. Beathard:

"This letter of Credit is to guarantee payment for services rendered to the Chicago Football Club Inc. General Partner of Chicago Winds Limited Partnership.

"You are hereby authorized to value on us for the account of Chicago Football Club Inc. General Partner of Chicago Winds Limited Partnership, 1580 North Northwest Highway, Park Ridge, Illinois up to an aggregate amount of Seventy Thousand Dollars and no/cents ($70,000.00) available in the event of default in eighteen (18) equal installments non-cumulative with the final installment due November 30, 1975.

"Drafts presented under this credit must be accompanied by a signed affidavit of Mr. Peter Beathard stating that the Chicago Football Club, Inc. General Partner of Chicago Winds Limited Partnership has not paid Mr. Beathard for a scheduled football game by Tuesday of the following week.

Richard W. Hillsberg, Northfield, Ill., for plaintiff.

Daniel A. Clune and Thomas R. Remick, Winston & Strawn, Chicago, Ill., for defendant The Mid-City National Bank.

Stephen Feinberg, Charles Pressman, Ronald Futterman and Aram A. Hartunian, Pressman & Hartunian, Chicago, Ill., for Chicago Football Club, Inc., Eugene Pullano and Frank Mariani.

## MEMORANDUM OPINION

DECKER, District Judge.

In this diversity action, two former football players for the Chicago Football Club, Inc. (Club)[1] seek payment of the salaries which the Club refused to pay after it was terminated as the holder of the Chicago franchise in the World Football League (WFL). Plaintiffs, Peter Beathard and Lawrence Jameson, signed player contracts with the Club in June 1975. Under the contracts Beathard was to receive a $12,000 bonus for signing and $70,000 for the 1975 season. Jameson was to receive a bonus of $10,500 and $25,000 for the 1975 season. The compensation for the season was to be

1. During its brief existence, the Chicago Football Club, Inc., played under the name of the Chicago Winds.

"This Letter of Credit will expire December 3, 1975.

"Each draft must state on its face 'Drawn under Letter of Credit No. 160 dated August 15, 1975 of The Mid-City National Bank of Chicago, 801 West Madison Street, Chicago, Illinois 60607'.

"We hereby agree with the drawers, endorsers and bona fide holders of all drafts under and in compliance with the terms of this Letter of Credit that such drafts will be duly honored upon presentation to the drawee.

"This Letter of Credit is subject to the Uniform Customs and Practice for Documentary Credits (1962 Revision) International Chamber of Commerce Brochure No. 222.

"THE MID–CITY NATIONAL
BANK OF CHICAGO

"/s/ R. R. Cadek
"R. R. Cadek
"Assistant Cashier
"RRC:cg"

Jameson's letter, No. 161, was identical except for the name and the amount.

On September 1, 1975, the WFL revoked the franchise of the Chicago Football Club, Inc., and cancelled all games scheduled between the Club and other members of the World Football League. From that date to the present, the Club has paid no salary to either plaintiff. When the Club failed to pay them their salaries, plaintiffs presented drafts under their letters of credit to the Mid-City National Bank. Plaintiffs were informed that the letters of credit had been revoked and the drafts were dishonored. This lawsuit is the product of plaintiffs' inability to collect their agreed salaries from either the Club or Mid-City. Beathard claims that he is entitled to $50,555.55

under the contract and the Letter of Credit and Jameson claims $19,440.00.

Though plaintiffs assert claims against a number of parties on a variety of theories,[2] the motions presently before the court concern only their claim against Mid-City National Bank based on Letters of Credit Nos. 160 and 161.

The two plaintiffs and the Bank have moved for summary judgment on this claim. The Bank asserts that, as a matter of law, the letters are revocable, and that as a matter of undisputed fact, the letters were properly revoked. Plaintiffs assert that, as a matter of law, the letters are irrevocable and that, as a matter of undisputed fact, they have fulfilled all of the conditions of the letters of credit and are entitled to judgment in the full amount of their claims. For the reasons set forth below, the court finds that the Bank is correct and its motion for summary judgment must be granted.

Obviously, the critical inquiry on these motions is whether the letters at issue were revocable or irrevocable. Under § 5–106(3) of the Uniform Commercial Code, Ill.Rev. Stat. ch. 26, § 5–106(3), ". . . a revocable credit . . . may be modified or revoked by the issuer without notice to or consent from the customer or beneficiary." The Code Comment states that,

"So far as a revocable letter of credit is concerned, the rules stated in subsections (3) and (4) are intended to show that so far as the customer or beneficiary are concerned establishment of such a credit has no legal significance."

Article 2 of the Uniform Customs and Practice for Documentary Credits, incorporated by reference by the seventh sentence of the letters of credit, states,

**2.** Plaintiffs seek to recover from the Club, from Eugene Pullano, who is unidentified in the pleadings but was apparently a principal owner of the Club and the person with whom the plaintiffs negotiated their contracts, and Frank Mariani, General Manager of the Club, for breach of contract and fraud, and from the Club as third party beneficiaries of a contract between the Club and the WFL.

The Bank has cross-claimed against the Club and Pullano, on a guarantee of the Club's obligations allegedly executed by them and has filed a third-party complaint against nine other individuals who allegedly guaranteed the obligations of the Club.

"A revocable credit does not constitute a legally binding undertaking between the bank or banks concerned and the beneficiary because such a credit may be modified or cancelled at any moment without notice to the beneficiary."

Clearly, if these letters of credit are found to be revocable, plaintiffs have virtually no rights under them, and they cannot succeed in their claim against the Bank.[3]

An irrevocable credit, on the other hand, "is a definite undertaking on the part of an issuing bank and constitutes the engagement of that bank to the beneficiary or, as the case may be, to the beneficiary and bona fide holders of drafts drawn and/or documents presented thereunder, that the provisions for payment, acceptance or negotiation contained in the credit will be duly fulfilled, provided that all the terms and conditions of the credit are complied with.

.    .    .    .    .

"Such undertakings can neither be modified nor cancelled without the agreement of all concerned." Uniform Customs and Practice for Documentary Credits, Article 3.

The Uniform Commercial Code provides that,

"Unless otherwise agreed once an irrevocable credit is established as regards the customer it can be modified or revoked only with the consent of the customer and once it is established as regards the beneficiary it can be modified or revoked only with his consent." Ill.Rev.Stat. ch. 26, § 5–106(2).

If the letters of credit are found to be irrevocable, plaintiffs have only to show that they have complied with all of the terms of the letters to prevail on their claim against the Bank.

There is a dearth of case law on the question of what constitutes an irrevocable letter of credit. The Uniform Commercial Code is similarly silent. The only guidance

provided the court is in Article I of the Uniform Customs, which states,

"all credits  .   .   . should clearly indicate whether they are revocable or irrevocable.

"In the absence of such indication the credit shall be deemed to be revocable, even though an expiry date is stipulated."

Both sides agree that by virtue of the incorporation of the Uniform Customs into the letters of credit, the language of Article I is determinative of the question of the letters' revocability.

■ Plaintiffs argue that although the letters of credit do not expressly state that they are irrevocable, the language of the letters "clearly indicates" that they are. They first point to the statement in the first sentence that "This letter of Credit is to guarantee payment for services rendered to the [Club]." Plaintiffs assert that this language shows the letters to be irrevocable because only an irrevocable letter constitutes any sort of guarantee. A revocable letter, they argue, gives the beneficiary such attenuated rights that it cannot properly be called a guarantee. This argument is not correct. All letters of credit, both revocable and irrevocable, are guarantees of a sort. To be sure, the guarantee of a revocable letter of credit is considerably less valuable than that of an irrevocable letter, but a guarantee does not have to be complete and absolute to be worthy of the name. The use of this single word does not constitute a "clear indication" of irrevocability.

■■ Neither does the sixth sentence of the letters, alone or in conjunction with the use of the word "guarantee" in the first sentence, indicate irrevocability. Plaintiffs argue that this language makes sense only in the context of an irrevocable letter of credit. They point out that Article 3 of the Uniform Customs describes the obligations of an issuer of an irrevocable letter credit in

---

**3.** The Bank has shown by affidavit that the letters of credit were in fact revoked. Plaintiffs do not dispute this fact, though they raise questions as to the precise manner in which the

decision to revoke was reached. These questions, however, are not material to the issues before the court on this motion. See Uniform Commercial Code § 5–106(3), *supra*.

similar language.[4] They have also submitted several examples of irrevocable letters from *Bender's UCC Forms and Practice* which contain virtually identical language. The terms contained in the sixth sentence, however, are equally applicable to revocable and irrevocable letters of credit. Under either sort of letter, the issuer undertakes to honor drafts drawn "under and in compliance with the terms of [the letter]." In the case of a revocable letter, one of the terms of the letter requires that a draft be drawn or presented prior to the revocation of the letter. Drafts drawn in compliance with that and all other relevant terms must be honored by the issuer.[5]

■ Thus, the language of the first six sentences of the letters of credit here in dispute does not reveal whether the letters are revocable or irrevocable. In such a situation, Article I of the Uniform Customs, which is incorporated by reference by the seventh sentence, provides that the letters must be deemed revocable.

Plaintiffs argue that even if the letters are found to have been revocable, they are still entitled to recover from the Bank. Beathard states in an affidavit,[6] that he was told on August 18, 1975, by R. R. Cadek, Assistant Cashier at the Mid-City National Bank that "in his judgment [Letter of Credit No. 160] was an irrevocable Letter of Credit."[7] On the basis of this statement, plaintiffs argue that the Bank should be estopped from denying that the letters were irrevocable and plaintiff should be permitted to recover the entire amount due under the letters. This argument is without merit.

■ The doctrine of equitable estoppel, which plaintiffs seek to invoke, provides that one who, by misrepresentation, induces another to act to his injury, is estopped to deny the truth of the representation. Among the elements of equitable estoppel are reliance on the representation by the party seeking to invoke the doctrine and injury to that party as a result of that reliance. *Bondy v. Samuels*, 333 Ill. 535, 165 N.E. 181 (1929); *Dill v. Widman*, 413 Ill. 448, 109 N.E.2d 765 (1953). Without considering whether the facts of this case otherwise meet the requirements of equitable estoppel, it is clear that plaintiffs can show no detrimental reliance.

■ To begin with, it appears from Beathard's affidavit that he neither acted nor forebore to act in reliance upon Cadek's alleged representation that the letter was irrevocable. Beathard signed his contract with the Club on June 18th or July 2nd. The letter of credit was not issued until August 15th. Clearly, Beathard could not have contractually obligated himself to the Club in reliance on Cadek's purported statement. Neither did he begin to take part in the practices and games of the Chicago Football Club in reliance on Cadek's alleged statement. Beathard participated in and was paid for two exhibition games in July, 1975, and two regular season games during the first two weeks of August. The only action which Beathard could conceivably have taken in reliance on an August 18th statement that the letter of credit was irrevocable was to continue to play with the Club for the two weeks between August

---

4. Article 3 of the Uniform Customs provides: "An irrevocable [letter of credit] . . . constitutes the engagement of that bank to the beneficiary or, as the case may be, to the beneficiary and bona fide holders of drafts drawn and/or documents presented thereunder, that the provisions for payment . . . contained in the credit will be duly fulfilled, provided that all the terms and conditions of the credit are complied with.

5. Davenport and Hensen, *Illinois Practice Uniform Commercial Code Forms Annotated*, Vol. 1, pp. 320–321, presents a form containing language identical to that in the sixth sentence of

the letters of credit at issue and advises, at p. 323, that the form may be prepared as either a revocable or irrevocable letter of credit.

6. Submitted as Exhibit A to plaintiffs' Memorandum in Opposition to Motion of Defendant [Bank] for Summary Judgment and in Support of Plaintiffs' Motion for Summary Judgment.

7. Cadek, in an affidavit submitted as Exhibit B to the Bank's Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment, denies that he ever made such a statement to Beathard.

18th and September 2nd, when the Club lost its WFL franchise. Assuming that Cadek did make the statement claimed by Beathard and that he did rely on that statement in continuing to play for the Club, Beathard suffered no injury because of that reliance because he was paid for all of the games in which he participated. Clearly, even if Cadek did state that, in his opinion, the letter was irrevocable, the Bank is not estopped from asserting that the Beathard letter was revocable.

 Jameson has no estoppel argument at all. He does not allege that anyone connected with the Bank made any representations of any sort to him with respect to the letters of credit. The representations made by the other defendants about the status of the letters of credit can have no bearing on the Bank's liability under those letters.

Finally, plaintiffs argue that it would be unconscionable within the meaning of Ill.Rev.Stat. ch. 26, § 2–302,[8] Unconscionable Contract or Clause, to find the letters of credit at issue here revocable. They correctly concede that § 2–302 is not applicable to letters of credit,[9] but seek to have this court employ an equitable equivalent of § 2–302 to deny the Bank the benefits of revocability. Plaintiffs cite no authority in support of their theory of equitable unconscionability, and the court has found none. Assuming that the court would have the power, in an appropriate case, to render a revocable letter of credit irrevocable, this is not such a case. All of the parties involved bargained over the terms of the employment agreements and the letters of credit at arms length and with the assistance of counsel. There is no claim that plaintiffs were forced to accept the terms of the letters. While the letters quite apparently did not provide plaintiffs

with the security they sought, revocable letters of credit are a well established type of document and their use in this case does not "shock the conscience of the court."

Therefore, because the court has found that letters of credit numbers 160 and 161 were revocable and were revoked prior to the Bank's dishonor of any drafts drawn under those letters, defendant Mid-City Bank's motion for summary judgment on Counts III and IV must be, and hereby is, granted.

---

8. § 2–302 provides: "If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result."

9. Article Two of the Uniform Commercial Code of which § 2–302 is a part applies only to transactions in goods. Ill.Rev.Stat. ch. 26, § 2–102.