**DATA GENERAL CORP., INC.**

v.

**CITIZENS NATIONAL BANK OF FAIRFIELD.**

Civ. No. B 78–204.

United States District Court, D. Connecticut.

Feb. 29, 1980.

Ronald J. Cohen, Lawrence W. Iannotti, Tyler, Cooper, Grant, Bowerman & Keefe, New Haven, Conn., for plaintiff.

L. Douglas Shrader, Charles M. Needle, Zeldes, Needle & Cooper, Bridgeport, Conn., for defendant.

## MEMORANDUM OF DECISION GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

ELLEN B. BURNS, District Judge.

Plaintiff, a Delaware corporation with its principal place of business in Westboro, Massachusetts, designs and produces computer hardware and software. Plaintiff entered into a contract, dated November 13, 1976, with B.B.S. Systems, Inc. (hereinafter B.B.S.), located in Fairfield, Connecticut, to sell certain computer equipment to B.B.S., which equipment was to be used by the Town of North Haven. Some time thereafter, defendant, Citizens National Bank of Fairfield, a national banking corporation located in Fairfield, Connecticut, was contacted to serve as the issuing bank in a letter of credit in which plaintiff would be the beneficiary. A letter was written on April 4, 1977, by defendant's president, Mr. Raymond T. Bogert, to plaintiff, Bogert Affidavit, Exh. 1 (filed June 14, 1979), and a Mailgram was returned on April 13, 1977. On April 22, 1977, Bogert mailed two letters to plaintiff, with copies sent to B.B.S. One letter read in full:

Based on Assignment of funds to us by the subject and originating from the Town of North Haven, this Bank hereby commits to honor your draft in an amount not to exceed $83,000 relative to the Data General–B.B.S. OEM contract of November 13, 1975, provided:

1) Said draft is in bankable form, and

2) Said draft is accompanied by a certification that the items called for in Town of North Haven purchase order No. 12991, dated 3/2/77, have been delivered and have successfully completed the Data General standard diagnostic test.

We have endeavored to cover all the essential elements in your Mailgram of April 13, but if there are any questions, please contact the undersigned.

Bogert Affidavit, Exh. 2. The other letter read in full:

Based on Assignment of funds to us by the subject and originating from the Town of North Haven, this Bank hereby commits to honor your draft in an amount not to exceed $83,000, relative to the Data General–B.B.S. OEM contract of November 13, 1975, provided:

1) Said draft is in bankable form, and

2) Said draft is accompanied by a certification provided by Data General Corp. that all the equipment supplied by Data General Corp. as called for in B.B.S. Systems purchase order # TNH–01 dated 12–12–76, will have completed the running of the Data General Standard Diagnostic Test.

3) This amount will be paid directly to Data General Corp., Route 9, Westboro, Mass. 01591, no later than 30 days after receipt by Citizen's National Bank of Fairfield, unless Data General Corp. has recieved [sic] payment in full from B.B.S. Systems Inc. Any partial payment from B.B.S. Systems Inc. against referenced purchase order number will reduce the amount to be covered under this document.

Bogert Affidavit, Exh. 3; Lawrence Affidavit, Exh. A (filed Dec. 6, 1978); Complaint, Exh. A (filed May 31, 1979).[1]

On October 21, 1977, plaintiff mailed a letter to Mr. Robert Winstanley, of the defendant bank, certifying that the computer equipment had passed the required tests and also enclosing a draft, dated October 20, 1977, for payment in the amount of $82,070.50.[2] Lawrence Affidavit, Exhs. B

---

1. The April 4, 1977 letter, Bogert Affidavit, Exh. 1, and one April 22, 1977 letter, Bogert Affidavit, Exh. 2, refer to "Town of North Haven purchase order No. 12991, dated 3/2/77," whereas the other letter of April 22, Bogert Affidavit, Exh. 3; Lawrence Affidavit, Exh. A; Complaint, Exh. A, refers to "B.B.S. Systems purchase order # TNH 01, dated 12/12/76." However, all three documents begin with the caption "Re: B.B.S. Systems Inc./Reference # 4477b." The court assumes that all three letters refer to the same underlying transaction between B.B.S. and plaintiff.

2. The text of this letter read in full:
   This letter is to certify that all the equipment supplied by Data General Corporation as called for in BBS Systems purchase order

and C; Complaint, Exhs. B and C. On February 16, 1978, Winstanley wrote a letter to plaintiff in which he denied the bank's obligation to make payment against the October 20, 1977 draft. Lawrence Affidavit, Exh. D; Complaint, Exh. D.[3] In this suit, based upon diversity jurisdiction, plaintiff claims it is entitled to payment of $82,070.50 plus attorneys fees and costs.

■ Defendant opposes plaintiff's motion for summary judgment on the grounds that there are genuine issues of material facts to be resolved, including questions whether there had been a valid contract between plaintiff and defendant, whether plaintiff had made its acceptance of the contract known to defendant, whether acceptance was a condition precedent to the letter of credit, whether the April 22, 1977, letter constituted the letter of credit, whether the assignment of funds from B.B.S. to defendant was a condition of the letter of credit, and whether all other conditions were met. The court disagrees, for suits concerning letters of credit are especially appropriate for determination by motions for summary judgment, whether on cross–motions by both parties, *e. g., Bossier Bank & Trust Co. v. Union Planters National Bank*, 550 F.2d 1077, 1078 (6th Cir. 1977); *Venizelos, S.A. v. Chase Manhattan Bank*, 425 F.2d 461, 463 (2d Cir. 1970); *Dulien Steel Products, Inc. v. Bankers Trust Co.*, 298 F.2d 836, 837 (2d Cir. 1962); *Beathard v. Chicago Football Club, Inc.*, 419 F.Supp. 1133, 1136 (N.D.Ill. 1976); motions for summary judgment by the defendant bank, *e. g., Barclays Bank D.C.O. v. Mercantile National Bank*, 481 F.2d 1224, 1226 (5th Cir. 1973), *cert. dismissed*, 414 U.S. 1139, 94 S.Ct. 888, 39 L.Ed.2d 96 (1974); *Far Eastern Textile, Ltd. v. City National Bank & Trust Co.*, 430 F.Supp. 193 (S.D.Ohio 1977); or motions for summary judgment by the plaintiff beneficiary, *e. g., New York Life Insurance Co. v. Hartford National Bank & Trust Co.*, 173 Conn. 492, 378 A.2d 562 (1977). As the district court observed in *West Virginia Housing Development Fund v. Sroka*, 415 F.Supp. 1107, 1110 (W.D.Pa.1976), "Liability on the letter of credit presents solely *legal* issues and thus can be disposed of by the court on a motion for summary judgment." (emphasis in original). *Cf. Dovenmuehle, Inc. v. East Bank of Colorado Springs, N.A.*, 563 P.2d 24, 27 (Colo.App.1977) (evidence offered by defendant bank to prove the intent of the parties to a letter of credit was excluded properly). Moreover, the affidavits of Richard Lawrence, plaintiff's regional credit manager, and of Bogert do not differ as to the sequence of events; they only dispute the significance of the events.

Letters of credit are governed by Article 5 of the Uniform Commercial Code [hereinafter U.C.C.], codified in Connecticut at Conn.Gen.Stat. §§ 42a–5–101 to 42a–5–117.[4]

# TNH 01 has satisfactorily completed the running of the Data General standard diagnostic test.
I am also enclosing a draft in the amount of $82,070.50 for payment of invoices which were billed for subject equipment. Should there be any problem in making payment against this draft, please contact me immediately. Thank you in advance for your cooperation in this matter.

3. The body of this letter read in full:
Reference is made to Data General Corporation's letter of October 21, 1977 to Citizen's National Bank of Fairfield and to the accompanying sight draft dated October 20, 1977 in the amount of $82,070.50.
So that there can be no misunderstanding of Citizen's National Bank of Fairfield's position, this is to advise that Citizen's National Bank of Fairfield denies any liability to Data General Corporation as a result of Data General Corporation's dealings with BBS Systems and specifically denies any obliation [sic] to make payment against the October 20, 1977 sight draft.
Curiously enough, although the letter is dated February 16, 1978, the receipt stamp of plaintiff's credit department is dated January 23, 1978. Because defendant has not contested the authenticity of this letter, the court assumes that the receipt stamp was inadvertently misdated.

4. The Connecticut version of Article 5 has been construed by courts on three different occasions, *Okay Industries, Inc. v. Continental Bank of Harvey*, Civil No. H78 342 (D.Conn. June 18, 1979), *reprinted in* 5 Conn.L.T., No. 34, at 9, col. 1 (Aug. 20, 1979); *U.S. Industries v. Second New Haven Bank*, 462 F.Supp. 662 (D.Conn.1978); *New York Life Insurance Co. v. Hartford National Bank & Trust Co.*, 173 Conn. 492, 378 A.2d 562 (1977).

Letters of credit commonly are used to facilitate commercial transactions between reluctant sellers and buyers, both of whom hesitate to initiate the exchange of money for goods. In a letter of credit, one or more banks function as intermediaries to avoid such an impasse. *See generally* Starr, *Connecticut Code Comments*, 20 Conn.Gen.Stat. Ann. 119–26 (1960); J. White and R. Summers, *Uniform Commercial Code* §§ 18–1 to 18–9 (1972); 50 Am.Jur.2d, *Letters of Credit* §§ 1–41 (1970 and 1979 Supp.) A letter of credit is designed to provide an assurance to the selling party of prompt payment upon presentation of documents, thereby substituting the credit of the bank for that of the buyer. *Pringle–Associated Mortgage Corporation v. Southern National Bank of Hattiesburg*, 571 F.2d 871, 874 (5th Cir. 1978); *Venizelos, S.A. v. Chase Manhattan Bank, supra*, 425 F.2d at 464; *West Virginia Housing Development Fund v. Sroka, supra*, 415 F.Supp. at 1109–10, 1112; *Dynamics Corp. of America v. Citizens & Southern National Bank*, 356 F.Supp. 991, 995 (N.D.Ga.1973); *New York Life Insurance Co. v. Hartford National Bank & Trust Co., supra*, 173 Conn. at 497, 378 A.2d 562. The particular letter of credit in this case falls within the ambit of U.C.C. § 5–102(1)(a) as a "credit issued by a bank if the credit requires a documentary draft or a documentary demand for payment." A letter of credit is defined as "an engagement by a bank or other person made at the request of a customer and of a kind within the scope of section 42a–5–102 that the issuer will honor drafts or other demands for payment upon compliance with the conditions specified in the credit." U.C.C. § 5–103(1)(a). The defendant here is the issuer, i. e., the bank or other person issuing a credit. U.C.C. § 5–103(1)(c). The plaintiff, the seller of the computer equipment, is the beneficiary, for it is the "person who is entitled under its terms to draw or demand payment." U.C.C. § 5–103(1)(d). B.B.S., the buyer of the equipment, is the customer, as that company was the "buyer or other person who causes an issuer to issue a credit." U.C.C. § 5–103(1)(g). The U.C.C. provides that no particular form of phrasing be required for a letter of credit. The only requisites are that the letter of credit be in writing and signed by the issuer. U.C.C. § 5–104(1).

■ In a letter of credit situation, there are ordinarily three separate and distinct contracts involved: (1) the contract between a bank and its customer (usually the buyer) whereby the bank agrees to issue the letter of credit to the beneficiary (usually the seller); (2) the contract of sale between the buyer and the seller whereby, among other things, the seller agrees to obtain payment under the letter of credit by drawing drafts thereunder and presenting them to the bank accompanied by documents specified by the buyer; and (3) the letter of credit itself, which is a contract between the bank and the beneficiary (usually the seller) whereby the bank agrees to pay the drafts drawn under the letter of credit and presented to it by the beneficiary if they are accompanied by the requisite documents. *Venizelos, S.A. v. Chase Manhattan Bank, supra*, 425 F.2d at 464–65; *Far Eastern Textile, Ltd. v. City National Bank & Trust Co., supra*, 430 F.Supp. at 195; *Savage v. First National Bank & Trust of Tulsa*, 413 F.Supp. 447 (N.D.Okl. 1976); *Dynamics Corp. of America v. Citizens & Southern National Bank, supra*, 356 F.Supp. at 995. A letter of credit is entirely independent of the underlying contract of sale between the customer and beneficiary; as long as the documents of the beneficiary are in order, the issuing bank must honor the demand for payment, regardless of whether the goods conform to the contract of sale. U.C.C. § 5–114, comment 1; U.C.C. § 5–109(1)(a) and comment 1; *Pringle–Associated Mortgage Corp. v. Southern National Bank of Hattiesburg, supra*, 571 F.2d at 874; *Courtaulds North America, Inc. v. North Carolina National Bank*, 528 F.2d 802, 805 (4th Cir. 1975);

For convenience purposes, throughout the remainder of this memorandum of decision, specific provisions of the Connecticut U.C.C. will be referred to as "U.C.C. § ___," rather than "Conn.Gen.Stat. § 42a ___."

*Venizelos, S.A. v. Chase Manhattan Bank,* *supra,* 425 F.2d at 465; *Dulien Steel Products, Inc. v. Bankers Trust Co., supra,* 298 F.2d at 841; *Far Eastern Textile, Ltd. v. City National Bank & Trust Co., supra,* 430 F.Supp. at 195; *Bossier Bank & Trust Co. v. Union Planters National Bank,* No. C75–101 (W.D.Tenn. Aug. 25, 1975), *aff'd and reprinted in* 550 F.2d 1077, 1081 (6th Cir. 1977); *New York Life Insurance Co. v. Hartford National Bank & Trust Co., supra,* 173 Conn. at 497, 498–99. This independence is even true in cases in which the letter of credit specifically incorporated the underlying contract of sale, *CNA Mortgage Investors, Ltd. v. Hamilton National Bank,* 540 S.W.2d 238 (Tenn.App.1975), or when an inadvertent error in the price was made, *It's Devine Industries, Ltd. v. Bank Leumi Trust Co. of New York,* 22 U.C.C. Rep.Serv. 130 (N.Y.S.Ct.1977). The sole interest of the issuing bank in a letter of credit transaction is in the documents to be presented, unless the parties agree otherwise; those documents must be exactly as stated in the letter of credit and the bank is obligated to pay only if the beneficiary has strictly complied with the terms of the letter.[5] *Courtaulds North America, Inc. v. North Carolina National Bank, supra,* 528 F.2d at 805–06; *U.S. Industries v. Second New Haven Bank,* 462 F.Supp. 662, 664 (D.Conn.1978); *Bossier Bank & Trust Co. v. Union Planters National Bank, supra,* 550 F.2d at 1081; *Dynamics Corp. of America v. Citizens & Southern National Bank, supra,* 356 F.Supp. at 995. The bank's function is "basically ministerial," *Far Eastern Textile, Ltd. v. City National Bank & Trust Co., supra,* 430 F.Supp. at 196, for the bank is deprived of any discretion not granted within the letter of credit itself, *Dulien Steel Products, Inc. v. Bankers Trust Co., supra,* 298 F.2d at 840.

Defendant argues that the letter of credit was not binding upon it because plaintiff failed to "accept" the terms of the agree-ment. Such an acceptance was explicitly required in the letter of credit agreement in *Okay Industries, Inc. v. Continental Bank of Harvey,* Civil No. H78–342 (D.Conn. June 18, 1979), *reprinted in* 5 *Conn.L.T.,* No. 34, at 9, col. 1 (Aug. 20, 1979), in which the defendant issuing bank requested the plaintiff beneficiary to indicate satisfaction with the letter of credit's provisions by signing acceptance on a copy of the letter and returning it to the defendant. *Id.* at 9 col. 2 and n. 1. No such explicit instructions were made here.

Defendant suggests that it cannot ascertain which letter of credit, if any, was accepted by plaintiff. It is clear that the April 4, 1977, letter was rejected as plaintiff asked for major revisions in its telex of April 13, 1977. A more difficult question would be to determine which of the letters of April 22, 1977, is the operable letter of credit. Plaintiff has proceeded on the assumption that the more detailed letter, Complaint, Exh. A and Bogert Affidavit, Exh. 3, is the applicable letter. The court is not troubled by this selection as Exh. 3 is more comprehensive and rigorous than Exh. 2. The only material differences are that paragraph 2 of Exh. 3 specifies that the certification is to be supplied by the plaintiff and paragraph 3 specifies the manner of payment, a term which was lacking in Exh. 2. Paragraph 3 of Exh. 3 is less favorable to plaintiff as it allows defendant to offset against the funds due plaintiff any partial or full payment from B.B.S. to plaintiff. As long as plaintiff voluntarily has chosen to abide by Exh. 3, a letter of credit which imposes upon plaintiff more rigorous and less favorable terms than those found in Exh. 2, the court has no problem finding that Exh. 3 constitutes the appropriate letter of credit.

There are a number of theories under which summary judgment for the plaintiff may be granted. The first theory requires

---

**5.** Two different standards have developed: if the beneficiary sues an issuing bank for dishonoring a draft drawn pursuant to a letter of credit, "strict compliance" with the terms of the credit is required; however, if a customer sues an issuing bank for dishonor, all that needs to be proven is "substantial compliance." *Far Eastern Textile, Ltd. v. City National Bank & Trust,* 430 F.Supp. 193, 196 (S.D.Ohio 1977); *Marine Midland Grace Trust Co. v. Banco del Paris, S.A.,* 261 F.Supp. 884, 889 (S.D.N.Y. 1966).

the determination of whether the April 22, 1977, letter of credit was revocable or irrevocable. U.C.C. § 5–103(1)(a) states that a letter of credit "may be either revocable or irrevocable." No indication is given how to construe a letter of credit which fails to indicate its revocability or irrevocability. However, comment 1 states:

> Neither the definition nor any other section of this Article deals with the issue of when a credit, not clearly labelled as either revocable or irrevocable falls within the one or other category although the Code settles this issue with respect to the sales contract (Section 2–325). This issue so far as it effects [sic] an issuer under the Article is intentionally left to the courts for decision in the light of the facts and general law (Section 1–103) with due regard to the general provisions of the Code in Article 1 particularly Section 1–205 on course of dealing and usage of trade.

Certain legal consequences flow from categorizing a letter of credit as revocable or irrevocable. U.C.C. § 5–106(1)(b) provides that, unless otherwise agreed, a letter of credit is "established" as regards a beneficiary "when he receives a letter of credit or an authorized written advice of its issuance." Receipt by the beneficiary, not acceptance, is the pivotal action.[6] Once an irrevocable letter of credit is "established," unless otherwise agreed, as regards a beneficiary, it "can be modified or revoked only with his consent." U.C.C. § 5–106(2). Conversely, after a revocable letter of credit is "established," unless otherwise agreed, it "may be modified or revoked by the issuer without notice to or consent from the . . . beneficiary." U.C.C. § 5–106(3). Therefore, if the April 22 letter of credit were revocable, defendant had statutory authority to revoke and hence dishonor it; however, if the letter were irrevocable, defendant lacked such authority.

As the district court commented in *Beathard v. Chicago Football Club, Inc.,* *supra,* 419 F.Supp. at 1137, "(t)here is a dearth of case law on the question of what constitutes an irrevocable letter of credit." Some states have resolved this problem by appropriate legislation. For example, Fla. Stat. § 675.103 (1977) (U.C.C. § 5–103) requires a letter of credit to state whether it is revocable or irrevocable. Furthermore, the statute provides, "[I]n the absence of such statement [it] shall be presumed to be irrevocable." *See Lewis State Bank v. Advance Mortgage Corp.,* 362 So.2d 406, 409 (Fla.Dist.Ct.App.1978). Other states allow for reference to the Uniform Customs and Practices for Documentary Credits (hereinafter U.C.P.). New York, for example, is one of three states which added a subsection (4) to section 5–102, which reads:

> Unless otherwise agreed, this Article 5 does not apply to a letter of credit or a credit if by its terms or by agreement, course of dealing or usage of trade such letter of credit or credit is subject in whole or in part to the Uniform Customs and Practice for Commercial Documentary Credits fixed by the Thirteenth or by any subsequent Congress of the International Chamber of Commerce.

N.Y. Uniform Com. Law § 5–102(4) (McKinney). Therefore, if the parties provide that a letter of credit is subject to the U.C.P., the U.C.C. does not apply. J. White & R. Summers, *supra,* § 18–3, at 612. Article One of the U.C.P. provides that "all credits, therefore, should clearly indicate whether they are revocable or irrevocable. In the absence of such indication, the credit shall be deemed to be revocable even though an expiry date is stipulated." Prior to the adoption of the U.C.C., New York case law provided that an ambiguous letter of credit was to be construed as irrevocable,

---

**6.** 50 Am.Jur.2d, Letters of Credit, § 12, at 408 begins: "A letter of credit is not binding without acceptance, express or implied. Such acceptance must be given within the time limited and in the manner prescribed by the letter, and upon acceptance the issuer is obligated to pay in accordance with its terms on presentation of

the specified documents." (footnotes omitted). However, the section later adds: ". . . an irrevocable letter . . . is a contract to pay upon compliance with its terms and needs no formal acknowledgement or acceptance other than what is therein stated." *Id.* at 409.

thus protecting the beneficiary. *Laudisi v. American Exchange National Bank*, 239 N.Y. 234, 146 N.E. 347 (1924). There is an interesting question concerning the extent to which the U.C.C. has replaced this prior law; White and Summers believes it has. "Now by virtue of the New York amendment to Article Five, it appears that the U.C.P. governs in New York and that the New York case law which would otherwise have dictated a different result has been superseded." J. White and R. Summers, *supra*, § 8–3, at 613. This.could be true, however, only if the particular letter of credit specifies that only the U.C.P. applies, or both the U.C.C. and U.C.P., for the U.C.C. allows for reference to prior law if a situation or rule is not covered by the U.C.C., U.C.C. § 5–102(3) and comment 2. In *Beathard v. Chicago Football Club, Inc.*, *supra*, the parties themselves stated that their letter of credit was "subject" to the U.C.P. In *Beathard*, plaintiffs were players for a new football team, the Chicago Winds, which arranged for payment of plaintiffs' salaries by a letter of credit with the Mid–City National Bank. The issuing bank failed to honor plaintiffs' drafts, stating that the credit had been revoked. The court ruled for the bank because, by incorporating the U.C.P. by reference, the players allowed the letter of credit to be construed as revocable, in the absence of any indication to the contrary. 419 F.Supp. at 1138.

The letter of credit here does not make any reference to the U.C.P., nor does the Connecticut version of the U.C.C. provide any guidance. White and Summers advise that the best way to ensure that a letter of credit will be construed as irrevocable is to state so explicitly,

Article Five does not state that letters of credit are presumed to be irrevocable, yet it is a rare beneficiary who will look with delight upon a revocable credit. If the letter of credit is silent, the answer to whether it is irrevocable depends on case law. Thus, for practical purposes, it would appear that a further formal requirement for the issuance of an irrevocable letter of credit is that it expressly state that it is irrevocable.

J. White and R. Summers, *supra*, § 18–4, at 616.

A situation similar to the instant case arose in *West Virginia Housing Development Fund v. Sroka, supra*, in which the customer, a developer and mortgagor, arranged for a letter of credit from the defendant issuing bank for the benefit of the plaintiff beneficiary, a mortgagor.[7] The defendant dishonored the letter of credit, arguing that the letter was revocable and had been revoked properly. The court granted summary judgment for the plaintiff, finding that a revocable letter of credit is "in reality, an illusory contract" because of the issuing bank's ability to revoke it without the beneficiary's knowledge or consent. 415 F.Supp. at 1111. Construing an ambiguous letter of credit as revocable would impede the "purpose and function" of such letters. *Id.* at 1112.[8]

This court finds the reasoning of the *West Virginia* case persuasive. The bank's role in a letter of credit is to facilitate commercial transactions between its customer and the beneficiary by creating an arrangement whereby the beneficiary seller can deal freely with the buyer without fear that payment will be withheld. A revocable letter of credit provides the beneficiary seller with little protection. Therefore, unless otherwise provided in the letter of credit itself, there should be a presumption in favor of irrevocability. The court finds the April 22, 1977, letter to be an irrevocable letter of credit. The credit was established upon its receipt, by plaintiff, U.C.C. § 5–106(1)(b), obviating the need for acceptance. Once an irrevocable letter of credit is established, the issuing bank cannot revoke or modify the letter without the beneficiary's consent, U.C.C. § 5–106(2). Therefore, the letter of credit here was still in effect when

---

**7.** This case is discussed in greater detail at p. 788 of this memorandum of decision.

**8.** In reaching this decision, the court also relied upon general rules of construction for contracts. *See* pp. 784 785 *infra*.

plaintiff presented its draft to the defendant bank. The bank having dishonored the draft at that time, plaintiff's motion for summary judgment is granted.

■ Summary judgment for plaintiff is also appropriate under a theory that letters of credit are not formal contracts which mandate the standard contractual requirements of offer, acceptance, and consideration. Indeed, the definitional section, section 5–103(1)(a), defines a letter of credit as an "engagement" to honor drafts, not a "contract." Similarly, section 5–105 provides that no consideration is necessary to establish a letter of credit. White and Summers agree:

> The obligations, particularly those of an issuer to a beneficiary, that arise under a letter of credit are not exclusively contractual in nature, and it is unfortunate that some of the Code comments suggest as much. It is true that the issuer's customer and the beneficiary will ordinarily have a contract, for instance, for the purchase and sale of goods, for the construction of a ship, or the like, and it is also true that the issuer and the customer will ordinarily have a contract between them whereby the customer pays a fee and the issuer issues the letter of credit. But the resulting letter of credit is not itself a contract, and the issuer's obligation to honor drafts drawn by the beneficiary is not, strictly speaking, contractual. The beneficiary does not enter into any agreement with the issuer.

J. White and R. Summers, *supra*, § 18–2, at 607. Therefore, under such an analysis, no acceptance is necessary, and hence defendant's argument fails.

■ Moreover, summary judgment may be granted for plaintiff even if a letter of credit is treated as contractual in nature. Several courts have applied general contract principles in construing the nature and terms of a letter of credit. *E. g., Bank of North Carolina, N.A. v. Rock Island Bank*, 570 F.2d 202, 207 (7th Cir. 1978); *Venizelos, S.A. v. Chase Manhattan Bank*, *supra*, 425 F.2d at 465–66; *West Virginia Housing Development Fund v. Sroka, su-*

*pra*, 415 F.Supp. at 1112; *New York Life Insurance Co. v. Hartford National Bank & Trust Co., supra*, 173 Conn. at 497, 378 A.2d 562. One general proposition of contract law is that a construction that will make the letter valid and enforceable will be preferred to one that will defeat it. *Bank of North Carolina, N.A. v. Rock Island Bank, supra*, 570 F.2d at 207; *Venizelos, S.A. v. Chase Manhattan Bank, supra*, 425 F.2d at 465; *West Virginia Housing Development Fund v. Sroka, supra*, 415 F.Supp. at 1112. Another principle which courts have applied to letters of credit is to construe the words as strongly against the drafter, in most cases the issuer, as a reasonable reading will justify. *Bank of North Carolina, N.A. v. Rock Island Bank, supra*, 570 F.2d at 207; *Venizelos, S.A. v. Chase Manhattan Bank, supra*, 425 F.2d at 466, 467; *West Virginia Housing Development Fund v. Sroka, supra*, 415 F.Supp. at 1112.

■ Four contractual doctrines support granting summary judgment for plaintiff. One is the concept that in bilateral contracts, acceptance can be manifested in other than oral or verbal forms. Acceptance of an offer need not be express but may be shown by any words or acts which indicate the offeree's assent to the proposed bargain. *Bridgeport Pipe Engineering Co. v. DeMatteo Construction Co.*, 159 Conn. 242, 246, 268 A.2d 391 (1970); *Beech Aircraft Corp. v. Flexible Tubing Corp.*, 270 F.Supp. 548, 558–59 (D.Conn.1967). Likewise, under certain circumstances, where the offeree fails to reply to the offer, the offeree's silence and inaction may constitute an implied acceptance. *Shulman v. Hartford Public Library*, 119 Conn. 428, 433, 177 A. 269 (1933). Thus, it would not be unreasonable to find that plaintiff had accepted the terms of the April 22, 1977, letter, either by not immediately rejecting it, as it had done with respect to the April 4 letter, or by shipping the computer equipment and presenting the certification and draft to defendant. Similarly, the letter of credit can be construed as a unilateral contract, created when the promisor bargains only for an act, not for a return promise.

Only an act creates the obligation, as the promisee's performance, within a time specified in the contract or within a reasonable time, constitutes acceptance. *Eaton Factors Co. v. Bartlett*, 1 Conn.Cir. 376, 24 Conn.Supp. 40, 43, 186 A.2d 166 (App.Div. 1962). As a unilateral contract, the issuer would be the offeror and the beneficiary the offeree, who accepts by performing the underlying contract between the beneficiary and customer and by presenting the requisite documents to the issuing bank. Such was the case here. Moreover, the alleged "revocation" on February 16, 1978, was ineffective due to its tardiness. Although an offeror retains the right to revoke an offer, the revocation must be communicated to the offeree before he or she has accepted. *L. & E. Wertheimer, Inc. v. Wehle–Hartford Co.*, 126 Conn. 30, 35, 9 A.2d 279 (1939); *Lloyd & Elliott, Inc. v. Parke*, 112 Conn. 504, 507, 152 A. 825 (1931); *Frederick Raff Co. v. Murphy*, 110 Conn. 234, 240, 147 A. 709 (1929); *Jaybe Construction Co. v. Beco, Inc.*, 3 Conn.Cir. 406, 216 A.2d 208, 211 (App.Div.1965); Restatements of Contracts § 41 (1934). The attempted revocation occurred after plaintiff's "acceptance" of October 21, 1977, and thus was ineffective.

Lastly, a letter of credit can be analogized to a contract for a third party beneficiary. Some courts have made such a comparison:

> A letter of credit is essentially a third party beneficiary contract. A party wishing to transact business induces a bank to issue the letter to a third party. It is a contract between the procuring customer and the issuing bank for the benefit of the payee–beneficiary. In the ordinary letter of credit situation, at the request of one of its customers a bank issues directly to a third party a promise to pay a sum of money on being furnished with certain documents.

*Harvey Estes Construction Co. v. Dry Dock Savings Bank of New York*, 381 F.Supp. 271, 274 (W.D.Okl.1974). *See also West Virginia Housing Development Fund v. Sroka, supra*, 415 F.Supp. at 1109–10; *Savage v. First National Bank & Trust, supra*, 413 F.Supp. at 451. The right of the third party beneficiary to maintain a lawsuit to enforce a contract was first established by the Connecticut Supreme Court in *Baurer v. Devenis*, 99 Conn. 203, 121 A. 566 (1923), where the third party beneficiary was a creditor. However, in *Colonial Discount Co. v. Avon Motors, Inc.*, 137 Conn. 196, 75 A.2d 507 (1950), the Supreme Court refused to adopt Williston's and the Restatement's categorization of third party beneficiaries into three groups: donee beneficiaries, creditor beneficiaries, and incidental beneficiaries. 137 Conn. at 200–02, 75 A.2d 507. Instead, the court declared that the final test is whether the intent of the parties to the contract was that the promisor should assume a direct obligation to the third party. Here, the issuing bank is the promisor and the customer is the promisee; the very nature of a letter of credit imposes a direct obligation upon the issuing bank, so that the intent to benefit the beneficiary is clear, as the terminology itself suggests. No express assent or formal acceptance by the beneficiary of a third party beneficiary contract is necessary; it is sufficient that the beneficiary knows of the contract and accepts it when he or she begins an action to enforce it. *Levy v. Daniels' U–Drive Auto Renting Co.*, 108 Conn. 333, 339, 143 A. 163 (1928); *Baurer v. Devenis, supra*, 99 Conn. at 213, 121 A. 566; 17 Am.Jur.2d, *Contracts* § 314, at 742 (1964).

In addition, general equity principles compel summary judgment for plaintiff. U.C.C. § 5–102(3) acknowledges that a judge may need to reach beyond Article 5 to solve a letter of credit problem. Comment 2 to § 5–102 advises:

> The rules embodied in the Article can be viewed as those expressing the fundamental theories underlying letters of credit. For this reason the second sentence of subsection (3) makes explicit the court's power to apply a particular rule by analogy to cases not within its terms, or to refrain from doing so.

Section 5–104, comment 1 also provides, "Questions of mistake, waiver or estoppel

are left to supplementary principles of law."

■ The Fifth Circuit utilized the equitable doctrine of waiver in *Barclays Bank D. C. O. v. Mercantile National Bank, supra*, 481 F.2d at 1237. The equitable doctrine of estoppel has been applied to letter of credit situations in this district, *U. S. Industries v. Second New Haven Bank, supra*, 462 F.Supp. at 665–66, where the seller–beneficiary shipped its goods and thereafter presented its demand draft with accompanying documents on the expiration date of the letter of credit. An officer of the defendant–issuing bank assured the plaintiff's controller that, if there were any defects in the documents, he would contact him. Later that day, defendant's officer discovered "minor discrepancies" in the documents and, upon contacting the buyer–customer, learned that the buyer–customer did not want the drafts honored if there were actual inconsistencies with the terms of the letter of credit. Two days later, defendant notified plaintiff that it was dishonoring the draft. Judge Daly granted judgment for the plaintiff, finding that the documents were in substantial compliance with the letter of credit and that the defendant had been estopped from denying payment:

> In the present case, the plaintiff, based on the defendant's assurances, reasonably assumed that the defendant would honor its obligation under the letter of credit. Since the plaintiff acted in reliance and to its detriment, the defendant is estopped from asserting any defense it may have had concerning nonconformity of the documentary demand for payment without calling the discrepancy to the attention of the plaintiff prior to the expiration of the letter of credit. This situation, taken together with the fact that the goods concededly were sent and were received, leads this Court to the equitable conclusion that payment should be made pursuant to the letter of credit. . . .

*Id.* at 666. *See also Lewis State Bank v. Advance Mortgage Corp., supra*, 362 So.2d at 410 (customer which acquiesced in extension of irrevocable letter of credit cannot later protest that extension was made without its consent.) The court's analysis in *U.S. Industries* seems applicable here for the plaintiff had supplied the computer equipment and then presented its draft and documents to the defendant. Nearly four months later, defendant advised plaintiff for the first time that it would not honor the draft. Furthermore, defendant had six months to notify plaintiff that it intended to revoke the letter of credit, but failed to give plaintiff any indication to that effect. Plaintiff acted in reliance and to its detriment. By allowing plaintiff to rely upon the letter of credit for such a lengthy time, even after the equipment was supplied and the draft presented, defendant is estopped from denying its responsibility under the letter of credit.

The last issue to be resolved is defendant's claim that the assignment of funds from B.B.S., the customer, to defendant, the issuing bank, was a condition of the letter of credit. The letter of credit, dated April 22, 1977, began, "Based on Assignment of Funds to us by the subject and originating from the Town of North Haven, this Bank hereby commits to honor your draft. . . ." Bogert Affidavit, Exh. 3; Lawrence Affidavit, Exh. A; Complaint, Exh. A. While it is true that a beneficiary must comply with the conditions specified in a letter of credit, courts have construed letters of credit with a liberal eye in favor of the beneficiary. Such was the situation in three cases in which a mortgagor for a building complex (the customer) procured a letter of credit from a bank for the benefit of the mortgagee (the beneficiary). For example, in *Pringle–Associated Mortgage Corporation v. Southern National Bank of Hattiesburg, supra*, the plaintiff corporation, Pringle–Associated Mortgage Corporation, loaned $1,275,000 to a corporation, Gautier Gardens, Inc., for the construction of apartment buildings, in exchange for which Pringle obtained a mortgage on the buildings. Plaintiff further required Gautier to obtain an irrevocable letter of credit in plaintiff's favor for $250,000. This figure was beyond the ceiling allowed for local

banks, and thus separate letters of credit were obtained from the First Mississippi National Bank of Hattiesburg and the defendant, Southern National Bank of Hattiesburg. The letter of credit with the defendant provided that "this letter of credit is to be drawn upon only after the credit extended under a letter of credit issued on the same project by First Mississippi Bank of Hattiesburg, Mississippi in the amount of $125,000 has been exhausted." Pringle presented its draft to the defendant bank, which dishonored the draft for failure to provide evidence that the First Mississippi National Bank's letter of credit had been exhausted. The next day Pringle returned to defendant with a cashier's check issued by First Mississippi National Bank in accordance with its letter of credit, but the defendant again refused to honor the draft. Defendant argued, and the district court agreed, that the exhaustion provision meant that the funds from the First Mississippi Bank must have been expended in the construction of the apartments. The Fifth Circuit reversed, holding that such a construction implicitly made reference to the underlying contract, which is irrelevant in construing a letter of credit:

> Read without reliance upon the [underlying mortgage] contract, the word "exhaustion" can mean only that all of the funds available under First Mississippi's letter of credit must have been withdrawn.

571 F.2d at 865. Thus, the appellate court refused to read into the letter of credit conditions which relied upon the underlying contract between the customer and beneficiary and which were to the detriment of the beneficiary.

A similar interpretation was reached in *Lewis State Bank v. Advance Mortgage Corporation, supra*, where a partnership, Warrington Village Apartments, Ltd., received a loan from Advance Mortgage Corporation for $2,789,500 for the construction of an apartment complex, secured by a mortgage. This construction loan was insured by the United States Department of Housing and Urban Development [HUD], which required that the mortgagor deposit with the mortgagee 2% of the face amount of the loan as a "working capital deposit." Warrington made this deposit of $55,790 but later requested that a letter of credit be substituted instead. HUD agreed to the substitution as long as an irrevocable and unconditional letter of credit was issued by a banking institution. The plaintiff, Lewis State Bank issued the credit for $55,790 for the benefit of Advance and Advance then returned the cash deposit to Warrington. Prior to the expiration of the letter of credit, Advance informed Warrington, the customer, and Lewis State Bank, the issuing bank, that Advance would present a sight draft unless the letter of credit were extended. Lewis State Bank agreed to extend the credit for an additional six months but stated that it was incorporating into the original letter of credit certain provisions that no draws be made for anything other than working capital, as defined by correspondence from Advance to Lewis State Bank. Several days later Advance sent a letter to the bank in which it defined working capital. Warrington thereafter defaulted on its loan to Advance, prompting Advance to present its draft to the issuing bank. The bank refused to honor the draft without additional information as to the use of the funds. When this information was provided, Lewis State Bank honored the draft for $55,790. The bank then sued Warrington on a promissory note for $55,790 and Warrington impleaded Advance. The bank also filed a claim against Advance for unjust enrichment by failing to comply with the "working capital" terms of the letters exchanged at the time the bank extended the letter of credit. The trial court granted summary judgment for Advance, and the appellate court affirmed, on the grounds that the Lewis State Bank could not impose new conditions on the letter of credit but rather merely had extended the original credit. Moreover, the courts found that the correspondence relating to "working capital" was meant to "define and explain" that term and did not change the original irrevocable and unconditional letter of credit into a conditional one. 362 So.2d at 408, 410.

The district court was faced with a similar situation in *West Virginia Housing Development v. Sroka, supra,* where the plaintiff, West Virginia Housing Development, a government agency, executed a loan for $3,317,500 to a partnership, Bridgeport Gardens Associates, of which Sroka was a part'ner, to build a low–cost housing development, which was secured by a mortgage. This loan was insured by HUD, which, as in *Lewis State Bank, supra,* required the mortgagor either to deposit a percentage of the loan with the mortgagee as working capital or to procure an irrevocable and unconditional letter of credit in favor of the mortgagee. United States National Bank issued such a letter of credit for $66,350, which provided, *inter alia,* "Applicant [Sroka] informs us that this letter of credit relates to working capital funds for the captioned project." Following default by Bridgeport Gardens, HUD paid the plaintiff the outstanding balance minus the amount of the letter of credit. Plaintiff thereafter presented a sight draft to the issuing bank, which dishonored the draft. Plaintiff brought suit against Sroka and the partnership, the bank, and HUD, for payment of the $66,350. The defendants argued that a condition precedent to payment under the letter of credit was the need for working capital. The court disagreed, granting summary judgment against the bank for $66,350 for several reasons. As in *Pringle, supra,* the court stated that the defendants' proposed construction made the letter of credit dependent upon the underlying contract, which in turn would alter drastically the bank's obligations. 415 F.Supp. at 1112. And like the court in *Lewis State Bank, supra,* the reference to working capital did not "create a condition and merely [was] a recital of the reason the letter of credit was requested." *Id.* Finally, the court utilized the doctrine that documents are to be construed against the drafter, here the issuing bank, as strongly as a reasonable reading will justify. This doctrine "militates against reading conditions into the bank's obligations." *Id.*

■ The analysis of these three opinions leads the court here to find that the opening sentence of the April 22, 1977, letter of credit was not a condition precedent to defendant's obligation to honor a draft which complied with the letter of credit. As the *Pringle* and *West Virginia Housing Development* cases observed, such a construction would require a court to consider the underlying sales transaction, a task which is clearly beyond the court's scope of review. Secondly, like the courts in *Lewis State Bank* and *West Virginia Housing Development,* this court finds that the purpose of the reference to B.B.S. and the Town of North Haven was merely to explain the reason for issuing a letter of credit. Lastly, as in *West Virginia Housing Development,* general rules of construction dictate that words be construed against the issuer, here the defendant. The drafter clearly provided three numbered conditions to honoring the draft, all of which plaintiff observed. The language which defendant urges as a further condition is most logically construed as a statement of the consideration passing from the customer to defendant for the issuance of the letter. The court will not read into a letter of credit conditions which burden the beneficiary and over which the beneficiary has no control.

■ Furthermore, an issuing bank's duty to a beneficiary is unrelated to the relationship between the bank and its customer. If a bank issues a letter of credit without first securing funds from its customer, as the defendant implies here, the beneficiary should not be prejudiced by the bank's deliberate inaction or inadvertence. When an issuing bank is compelled to make payments to a beneficiary under a letter of credit, the bank is not necessarily defenseless, for it is "left to whatever remedies it may have against [its customer]." *U. S. Industries v. Second New Haven Bank, supra,* 462 F.Supp. at 666. And as the Third Circuit observed in *Chase Manhattan Bank v. Equibank,* 550 F.2d 882, 886 (3d Cir. 1977), "The possibility that the issuer may not be able to recover from the customer, however, does not bar the beneficiary in his suit against the bank."

■ Accordingly, summary judgment is granted for plaintiff. The amount of recovery is governed by U.C.C. § 5–115(1), which provides in pertinent part:

When an issuer wrongfully dishonors a draft or demand for payment presented under a credit the person entitled to honor has with respect to any documents the rights of a person in the position of a seller as defined in section 42a–2–707 and may recover from the issuer the face amount of the draft or demand together with incidental damages under section 42a–2–710 on seller's incidental damages and interest but less any amount realized by resale or other use or disposition of the subject matter of the transaction.

U.C.C. § 2–710 in turn provides in full:

Incidental damages to an aggreived seller include any commercially reasonable charges, expenses or commissions incurred in stopping delivery, in the transportation, care and custody of goods after the buyer's breach, in connection with return or resale of the goods or otherwise resulting from the breach.

As a general rule, attorney's fees are not recoverable as part of the damages unless specifically allowed by statute or contract. *State v. Bloomfield Construction Co., Inc.*, 126 Conn. 349, 359, 11 A.2d 382 (1940); *Theodore D. Bross Line Construction Corp. v. Ryan Crane Service Corp.*, 32 Conn.Supp. 181, 182, 345 A.2d 594 (Super.Ct.1975). Attorney's fees are not mentioned as recoverable damages under U.C.C. §§ 5–115(1) and 2–710, nor are they mentioned in the April 22, 1977, letter of credit. Therefore, plaintiff's request for attorneys fees is denied. However, plaintiff is entitled to interest under § 5–115(1), which interest begins to accrue from the date of the breach, not from the date of the contract, *Loomis v. Norman Printers Supply Co.*, 81 Conn. 343, 349–50, 71 A. 358 (1908). The date of the breach here is February 16, 1978, when defendant dishonored the letter of credit. Both the April 22, 1977, letter of credit and U.C.C. § 5–115(1) require deduction for any amounts previously received by plaintiff. Therefore, plaintiff is entitled to $82,070.50 less any payments directly received by plaintiff from B.B.S. pursuant to B.B.S. purchase order # TNH–01, dated December 12, 1976, plus interest, accruing from February 16, 1978.

SO ORDERED