STRINGER CONSTRUCTION COMPANY, INC., Plaintiff, *v.* THE
AMERICAN INSURANCE COMPANY, Defendant-Appellant.—(LAGRANGE
STATE BANK, Defendant-Appellee; CHICAGO HOUSING AUTHORITY
*et al.*, Defendants.)

First District (3rd Division)    No. 80-1847

Opinion filed November 4, 1981.—Modified on denial of rehearing December 30,
1981.

Charles A. Gilmartin and Daniel J. Mulcahy, both of Chicago (Gilmartin, Hallenbreck and Schroeder, Ltd., of counsel), for appellant.

John M. Burke, of Burke & Burke, Ltd., of Chicago, for appellee.

JUSTICE McGILLICUDDY delivered the opinion of the court:
This action was brought by Stringer Construction Company, Inc. (Stringer), the plaintiff, to enjoin the defendant, LaGrange State Bank

(LaGrange), from paying out on its letter of credit to the defendant, American Insurance Company (American).[1] After a hearing, plaintiff's motion for a preliminary injunction was granted and LaGrange was enjoined from honoring American's draft until further order of the court. American filed this interlocutory appeal pursuant to Supreme Court Rule 307(a)(1) (Ill. Rev. Stat. 1979, ch. 110A, par. 307(a)(1)).

The issues presented for review are whether the plaintiff satisfied the requirements for a preliminary injunction and whether the issuance of the preliminary injunction contravened article 5 of the Uniform Commercial Code Letters of Credit (Ill. Rev. Stat. 1979, ch. 26, pars. 5—101 to 5—117).

Stringer has not filed an appellee's brief in this matter. LaGrange argues that the issuance of the preliminary injunction should be affirmed.

Stringer had contracted with American to complete construction of a Chicago Housing Authority project in accordance with provided plans. As a prerequisite for the award of this contract, Stringer was required to provide American with security in the form of a $50,000 deduction from the first payout on Stringer's work and a $150,000 letter of credit. Stringer obtained a letter of credit from LaGrange after a security agreement and promissory note in the amount of $150,000 had been signed. Philip Stringer (the president of Stringer), Linda Stringer (Philip's wife), and Allan G. Levine (Stringer's attorney) signed the promissory note. The irrevocable letter of credit provided in part:

> "We hereby authorize you to draw on us for account of Stringer Construction Company up to an aggregate amount of $150,000.00, U.S. Currency, available by your draft at sight accompanied by your signed statement that funds are required to cover liability, loss, cost, or expense incurred by you as a result of any breach by Stringer Construction Company * * * of a certain contract dated August 2, 1977, between Stringer Construction Company and American Insurance Company.
>
> * * *
>
> We hereby agree with you that all drafts drawn under and in compliance with the terms of this credit will be duly honored on delivery of documents as specified."

The construction contract between American and Stringer was signed on August 15, 1977.[2] Construction under the contract progressed

---

[1] Also named as defendants were the Chicago Housing Authority (CHA) and Shirpporeit & Associates, an architectural firm. Shirpporeit & Associates designed a housing project for CHA that Industrial Mechanical, Inc., American's principal under a surety agreement, had contracted to construct. When Industrial Mechanical, Inc., defaulted, the plaintiff contracted with American to complete the project.

[2] The letter of credit states that the contract between Stringer and American is dated August 2, 1977. There is no dispute that the contract between the parties was in fact dated August 15, 1977.

until February of 1980 when the Chicago Housing Authority advised American and American advised Stringer that the right to complete the project had been terminated. The termination was allegedly due to Stringer's failure to complete the project in accordance with the terms of the contract dated August 15, 1977.

On April 11, 1980, William J. Saelinger, surety claims supervisor for American, presented to LaGrange a letter, affidavit and sight draft in the amount of $150,000. The letter provided:

> "Pursuant to Irrevocable Letter of Credit No. 688 dated August 3, 1977 and renewed effective August 3, 1978 and further renewed effective as of August 3, 1979, American Insurance Company hands you herewith sight draft in the amount of $150,000.00 accompanied by the signed, certified statement of American Insurance Company that the funds in the amount of $150,000.00 are required to cover the liability, loss, costs and expense incurred by American Insurance Company as a result of the breach by Stringer Construction Company * * * of a certain contract dated August 2, 1977 between Stringer Construction Company and American Insurance Company.
>
> We trust that this sight draft will be honored and funds in the amount of $150,000.00 will be immediately transferred to American Insurance Company."

The accompanying affidavit provided:

> "William J. Saelinger, being first duly sworn on oath, deposes and says that he is Surety Claims Supervisor for American Insurance Company. He is familiar with the liability, loss, costs and expenses incurred by American Insurance Company as a result of the breach by Stringer Construction Company * * * of a certain contract dated August 2, 1977 between Stringer Construction Company and American Insurance Company.
>
> American Insurance Company has incurred in excess of $150,000.00 of liability, loss, costs and expenses."

LaGrange was subsequently instructed by Allan Levine to refuse to honor the draft. On April 17, 1980, the instant injunction action was instituted by Stringer.

Stringer's complaint for injunctive and other relief alleged that the demand by American was wrongful because Stringer did not breach the contract. The complaint alleged that American and the Chicago Housing Authority had breached the contract and had damaged Stringer by causing work stoppages and plan alterations which resulted in added costs without additional compensation to Stringer. The complaint further alleged that Stringer would suffer irreparable harm and had no adequate

remedy at law if LaGrange honored the draft because LaGrange would demand immediate payment from Stringer and Stringer would be forced to go out of business since it could not repay LaGrange.[3]

Evidence regarding the work performed by Stringer under the contract, payments received by Stringer from American, and additional costs incurred by Stringer as a result of work stoppages and design alterations ordered by the Chicago Housing Authority was presented at the hearing on the propriety of issuing the preliminary injunction. As this testimony is not relevant to our ruling in this case, we find it unnecessary to discuss it here. At the close of the hearing, the court entered the preliminary injunction.

American argues on appeal that in the case at bar the preliminary injunction was wrongfully issued because there was insufficient proof of irreparable injury, there was no showing of a likelihood of success on the merits, an adequate remedy at law existed, and the injury to American was more serious than that which would have befallen the plaintiff. American also argues that the injunction was overly broad.

We find it unnecessary to address these issues, however, because we believe that the preliminary injunction should not have been issued since the requirements of the Uniform Commercial Code relative to injunctive relief (Ill. Rev. Stat. 1979, ch. 26, par. 5—114(2)(b)) were not met.

Historically, the letter of credit has been recognized as a commercially useful credit device that substitutes the financial responsibility of a bank for the less desirable financial responsibility of a party to the commercial transaction. (Ill. Ann. Stat., ch. 26, art. 5, Introductory Comment, at 561 (Smith-Hurd 1963).) Section 5—103(a) of the Uniform Commercial Code (the Code) (Ill. Rev. Stat. 1979, ch. 26, par. 5—103(a)) defines a letter of credit as an engagement by a bank made at the request of a customer that the bank will honor the beneficiary's drafts or demands for payment upon the beneficiary's compliance with the conditions specified in the letter. The letter of credit in the instant case is categorized as a "guaranty" or "stand-by" letter of credit because it obligates the issuer (LaGrange) to pay the beneficiary (American) in the event of a default by the one who procured the letter's issuance (Stringer). (*Pastor v. National Republic Bank* (1979), 76 Ill. 2d 139, 390 N.E.2d 894.) Such an arrangement usually requires three separate and distinct contracts or agreements: the contract between the bank and its customer whereby the bank agrees

---

[3] Stringer's motion for a temporary restraining order similarly alleged that Stringer had no adequate remedy at law because if the letter of credit was honored, it would be unable to repay LaGrange and it would be forced into bankruptcy and would cease as a legal entity. The threat of bankruptcy, due to a forced liquidation of assets and inability to meet other obligations, was also alleged to be an irreparable injury upon Stringer if LaGrange was not enjoined from honoring the draft submitted by American.

to issue the letter of credit to the beneficiary, the underlying contract between the bank customer and the beneficiary, and the letter of credit itself. See *Dynamics Corp. of America v. Citizens & Southern National Bank* (N.D. Ga. 1973), 356 F. Supp. 991.

■■ The letter of credit is not a guaranty or surety arrangement because the issuer is bound to pay the beneficiary and because this obligation is not subject to the various defenses available to a guaranty or surety undertaking. (*Asociacion de Azucareros de Guatemala v. United States National Bank* (9th Cir. 1970), 423 F.2d 638; *Pastor v. National Republic Bank*.) Under section 5—114(1) of the Code (Ill. Rev. Stat. 1979, ch. 26, par. 5—114(1)), the issuer of the letter of credit has no right to refuse to honor a complying draft or demand. That section provides:

> "An issuer must honor a draft or demand for payment which complies with the terms of the relevant credit regardless of whether the goods or documents conform to the underlying contract for sale or other contract between the customer and the beneficiary."

Generally, if the documents presented conform to the letter of credit requirements, the issuer is not required or permitted to go behind the documents, and payment is required without reference to the rights and obligations of the parties to the underlying contract (*e.g., Baker v. National Boulevard Bank* (N.D. Ill. 1975), 399 F. Supp. 1021; *First Arlington National Bank v. Stathis* (1980), 90 Ill. App. 3d 802, 413 N.E.2d 1288) unless the letter of credit provides to the contrary. (*Pastor v. National Republic Bank.*) If this were otherwise, the unique commercial usefulness of the letter of credit as a vehicle of rapid and guaranteed payment in commercial transactions would be destroyed. *Asociacion de Azucareros de Guatemala v. United States National Bank.*

The independence of the letter of credit from the underlying contract was recognized in *Sztejn v. J. Henry Schroder Banking Corp.* (1941), 177 Misc. 719, 31 N.Y.S.2d 631. In *Sztejn*, the underlying contract involved a sales transaction. The buyer, who had obtained a letter of credit, sought to restrain the bank from honoring drafts submitted by the seller pursuant to the letter of credit because the seller had breached the underlying contract by shipping worthless goods. The *Sztejn* court stated:

> "It would be a most unfortunate interference with business transactions if a bank before honoring drafts drawn upon it was obliged or even allowed to go behind the documents, at the request of the buyer, and enter into controversies between the buyer and the seller * * *. If the buyer and the seller intended the bank to do so they could have so provided in the letter of credit itself, and in the absence of such a provision, the court will not demand or even

permit the bank to delay paying drafts which are proper in form." (177 Misc. 719, 721, 31 N.Y.S.2d 631, 633-34.) The court took exception to this general rule, however, because the beneficiary/seller had engaged in active fraud. The court stated:

> "In such a situation, where the seller's fraud has been called to the bank's attention before the drafts and documents have been presented for payment, the principle of the independence of the bank's obligation under the letter of credit should not be extended to protect the unscrupulous seller. * * *
>
> * * *'[W]hen the issuer of a letter of credit knows that a document, although correct in form, is, in point of fact, false or illegal, he cannot be called upon to recognize such a document as complying with the terms of a letter of credit.' " 177 Misc. 719, 722, 31 N.Y.S.2d 631, 634-35.

■■ Section 5—114(2)(b) of the Code, which is a codification of *Sztejn* (Ill. Ann. Stat., ch. 26, par. 5—114, Illinois Code Comment, at 598 (Smith-Hurd 1963)), allows the court to look at the underlying contract if there is fraud, forgery or other defect in the documents accompanying the beneficiary's draft. This provision has been given a narrow interpretation in Illinois so that the fraud must vitiate the entire transaction. Fraud in the factum or fraud in the formation of the underlying contract is required. *First Arlington National Bank v. Stathis.*

■■ American relies on the above-stated principles and argues that the weight of authority prohibits a consideration of American's and Stringer's performance of the underlying contract. American contends that Stringer has not claimed fraud, forgery or defect with respect to the underlying transaction and that, therefore, in accordance with section 5—114(2)(b) of the Code, the court should not have issued the preliminary injunction.

LaGrange argues that the injunction was properly issued because the documents submitted by American were defective on their face since Stringer did not breach the underlying contract and because the amount of loss allegedly suffered by American was untrue. LaGrange relies upon *Dynamics Corp. of America v. Citizens & Southern National Bank* (N.D. Ga. 1973), 356 F. Supp. 991, wherein a preliminary injunction was granted by the trial court.[4] In *Dynamics*, the beneficiary submitted a sight draft and documentation stating that the plaintiff had failed to carry out certain

---

[4] LaGrange has also relied upon cases involving the duty of the issuer of a letter of credit to honor drafts that have been negotiated to holders in due course. (*Bank of North Carolina v. Rock Island Bank* (C.D. Ill. 1979), 471 F. Supp. 1301, *rev'd* (7th Cir. 1980), 630 F.2d 1243; *United Bank Ltd. v. Cambridge Sporting Goods Corp.* (1976), 41 N.Y.2d 254, 392 N.Y.S.2d 265, 360 N.E.2d 943.) However, this situation is governed by section 5—114(2)(a) of the Code which does not concern the case at bar.

of the contractual obligations under their agreement. The underlying contract provided for the shipment of goods by the plaintiff to the beneficiary *f.o.b.* the plaintiff's plant. The plaintiff claimed that it had complied with this arrangement but that the beneficiary could not obtain the goods because of an embargo ordered by the President of the United States. The plaintiff argued that it had performed under the contract and that the beneficiary's certification to the contrary was therefore fraudulent. The *Dynamics* court followed the reasoning of *Sztejn* but adopted a broad definition of fraud. It stated that the beneficiary should not be able to take an unconscientious advantage of the plaintiff merely by submitting a pro forma declaration of breach that had no basis in fact.

*Dynamics* is distinguishable from the instant case because as noted above, Illinois has followed other jurisdictions in giving the fraud exception outlined in section 5—114 of the Code a narrow construction. (See *First Arlington National Bank v. Stathis.*) An injunction against honor, which interferes with business transactions freely negotiated between the parties (*Edgewater Construction Co. v. Percy Wilson Mortgage & Finance Corp.* (1976), 44 Ill. App. 3d 220, 357 N.E.2d 1307 (concurring opinion)), should be limited to situations where the wrongdoing of the beneficiary has so vitiated the entire transaction that the legitimate purposes of the independence of the issuer's obligation would no longer be served. (*Intraworld Industries, Inc. v. Girard Trust Bank* (1975), 461 Pa. 343, 336 A.2d 316.)

In the case at bar, American submitted a document to LaGrange stating that a breach of the underlying contract had occurred. Stringer admits that it did not complete the construction contract but argues that its failure to perform was occasioned by the actions of American and the Chicago Housing Authority. A bona fide dispute exists between the parties as to their liabilities under the underlying contract, and it may well be that Stringer's nonperformance was legally excused. We cannot say, however, that American, by submitting the document in question, committed a fraud that vitiated the entire transaction between the parties. Furthermore, even under the *Dynamics* standard of fraud, we do not find that American's declaration of breach was unconscientious or that it had absolutely no basis in fact.

As stated above, the letter of credit is not a guaranty or suretyship arrangement and a bank's obligations under the letter of credit are not subject to the various legal defenses available to those undertakings. Thus, Stringer's alleged defense to the breach-of-contract claim by American as well as Stringer's dispute with the amount of losses claimed to have been incurred by American should be addressed in an action at law. (*Edgewater Construction Co. v. Percy Wilson Mortgage & Finance Corp.*)

Since the requirements of section 5—114(2)(b) of the Code were not met, the preliminary injunction was improperly issued.

For the foregoing reasons, the order of the circuit court of Cook County is reversed.

Reversed.

RIZZI, P. J., and WHITE, J., concur.