MOUNT PROSPECT STATE BANK, Plaintiff-Appellee, *v.* MARINE MIDLAND BANK, Defendant-Appellant (Magic Automotive Products of Illinois, Inc., Defendant-Appellee).

First District (3rd Division)   No. 82—1110

Opinion filed December 7, 1983.—Rehearing denied February 28, 1984.

Paul A. Gold, of Chicago, for appellant.

Harry D. Lavery and George A. Zelcs, both of Berger, Newmark and Genchel, P.C., of Chicago, for appellee Mount Prospect State Bank.

E. K. Huszagh, of Miller, Forest, Downing, Rodman and Huszagh, Ltd., of Glenview, for appellee Magic Automotive Products of Illinois.

Charles M. Biggam, Jr., and William A. Barnett, Jr., both of Biggam, Cowan, Marquardt & Lunding, Chartered, of Chicago, for appellee John Fitzpatrick.

JUSTICE WHITE delivered the opinion of the court:

Plaintiff, Mount Prospect State Bank (Mount Prospect), brought this declaratory judgment action in the circuit court of Cook County against defendants, Marine Midland Bank (Marine Midland) and Magic Automotive Products of Illinois, Inc. (MAP of Illinois), seeking a declaration of the rights of the parties under a letter of credit issued by Mount Prospect in the amount of $50,000. John C. Fitzpatrick was granted leave to intervene as a party defendant. The circuit court entered summary judgment in favor of Mount Prospect and MAP of Illinois and held that Mount Prospect was not liable to Marine Midland, the purported assignee of the beneficiary of the letter of credit. Marine Midland now appeals from the order granting summary judgment.

The relevant facts follow. On May 15, 1979, Mount Prospect issued an irrevocable documentary letter of credit in the amount of $50,000 at the request of its customer, MAP of Illinois. The beneficiary of the letter of credit was Magic Automotive Products, Inc., located in Buffalo, New York (MAP of New York). The letter of credit expressly provided: that it was "subject to 'The Uniform Customs and Practice for Documentary Credits' (1974 Revision), the International

Chamber of Commerce Brochure No. 290"; that sight drafts drawn under the letter of credit must be drawn and negotiated not prior to November 15, 1979, nor later than November 30, 1979; and that the sight drafts were to be accompanied by "Invoices [and] Bills of Lading *** from Magic Automotive Products of Illinois, Inc." On June 14, 1979, the terms of the letter of credit were amended to require that sight drafts drawn under the letter of credit must be accompanied by "Invoices [and] Bills of Lading *** to Magic Automotive Products of Illinois, Inc."

On or about June 21, 1979, MAP of New York, the beneficiary, purported to assign all of its rights to draw under the letter of credit to Marine Midland. The purported assignment occurred in a letter dated June 21, 1979, from MAP of New York to Mount Prospect. It should be noted that neither the original letter of credit nor the amendment thereto provided that the letter of credit was transferable or assignable.

On June 27, 1979, the letter of credit was further amended to require that sight drafts drawn under the letter of credit must be accompanied by "Invoices [and] Bills of Lading *** to Magic Automotive Products of Illinois, Inc., covering shipments to various Magic Automotive Products of Illinois locations in the United States." The amendment also stated: "This Amendment will become effective upon receipt of the beneficiary's written consent." Despite the aforementioned purported assignment, the beneficiary's consent to the second amendment was given by Philip DiCarlo, the president of MAP of New York, not by Marine Midland. Thereafter, on July 5, 1979, Mount Prospect wrote a letter to Marine Midland acknowledging receipt of the June 21 letter. On July 9, 1979, Marine Midland sent a letter to MAP of Illinois which stated that the letter of credit had been assigned to Marine Midland. This letter was acknowledged by MAP of Illinois.

On or about November 15, 1979, Marine Midland attempted to draw on the letter of credit in the amount of $49,982.50. In so doing, Marine Midland presented to Mount Prospect two collection letters, two sight drafts, the original letter of credit and the amendments thereto, Mount Prospect's letter of July 5, 1979, and certain invoices and bills of lading. Copies of the invoices and bills of lading are contained in the record on appeal. There are 38 invoices and 34 bills of lading. Only three of the invoices reflect, on their faces, that they relate to shipments to MAP of Illinois locations in the United States. The remaining 35 invoices concern: (1) shipments made to entities and persons other than MAP of Illinois, such as MAP of Maryland, Sy

Norman in Massachusetts, and Dan Huber in Wisconsin; (2) interest; (3) service charges; and (4) shipping charges. The bills of lading are consistent with the invoices in that the vast majority of them concern shipments to entities other than MAP of Illinois.

Mount Prospect refused to honor the drafts drawn under the letter of credit, and on November 30, 1979, Mount Prospect filed its complaint for declaratory relief. The circuit court entered summary judgment in favor of Mount Prospect and MAP of Illinois, holding that Mount Prospect was not liable to Marine Midland under the letter of credit. The court found that the letter of credit was "nontransferable and nonassignable under any circumstances irrespective of any consent on the part of the parties and because said letter is subject to the UCPDC [Uniform Customs and Practice for Documentary Credits]." The court further found that "[t]his was a commercial transaction and not a transmittal of proceeds."

On appeal, Marine Midland contends that the circuit court's judgment was erroneous for three reasons. First, it argues that since all the parties to the letter of credit, Mount Prospect, MAP of New York and MAP of Illinois, consented to the transfer and assignment of the letter of credit and the proceeds thereof, the circuit court erred in finding that the letter of credit was nontransferable and nonassignable under provisions of the UCPDC. Secondly, it argues that the circuit court's rationale was erroneous because the proceeds of the letter of credit were transferable and assignable to Marine Midland under provisions of the UCPDC and article 5 of the Uniform Commercial Code (Ill. Rev. Stat. 1979, ch. 26, par. 5–101 *et seq.*). Lastly, it argues that the circuit court's finding that the letter of credit was nontransferable and nonassignable was erroneous, because all of the parties to the letter of credit consented to the transfer and assignment, and therefore, were estopped from asserting as a defense that it was nontransferable and nonassignable. We do not address these contentions because we are of the opinion that even if the right to draw under the letter of credit was properly transferred and assigned to Marine Midland, we would have to affirm the circuit court's entry of summary judgment because the invoices and bills of lading presented to Mount Prospect clearly did not comply with the terms of the letter of credit. In reaching this conclusion, we agree with the statement contained in the appellate brief of appellee Fitzpatrick that the assignability issue may be "extremely muddied and confused." Moreover, a reviewing court is not bound by the precise reasons given by the lower court in entering summary judgment, and we may sustain the entry of summary judgment if the decision is justified by any reason appearing in

the record. (*Erasmus v. Chicago Housing Authority* (1980), 86 Ill. App. 3d 142, 146, 407 N.E.2d 1031; *Weber v. Woods* (1975), 31 Ill. App. 3d 122, 132, 334 N.E.2d 857; see *In re Estate of Leichtenberg* (1956), 7 Ill. 2d 545, 549, 131 N.E.2d 487.) The issue of compliance was raised in the court below, and even though it was not the basis of the order from which this appeal is taken, in our opinion, it is dispositive of this appeal.

Section 5—103(1)(a) of the Uniform Commercial Code (Ill. Rev. Stat. 1979, ch. 26, par. 5—103(1)(a)) defines a letter of credit as "an engagement by a bank or other person made at the request of a customer *** that the issuer will honor drafts or other demands for payment upon compliance with the conditions specified in the credit." Generally, three separate agreements are involved in a letter of credit transaction: the contract between the issuer and its customer whereby the issuer agrees to issue the letter of credit to the beneficiary of the letter of credit; the contract between the customer and the beneficiary which is the agreement underlying the letter of credit; and the letter of credit itself, whereby the bank agrees to pay the beneficiary the amount of the letter of credit, if the beneficiary complies with the terms of the credit. *First Arlington National Bank v. Stathis* (1980), 90 Ill. App. 3d 802, 807, 413 N.E.2d 1288; see *Stringer Construction Co. v. American Insurance Co.* (1981), 102 Ill. App. 3d 919, 922-23, 430 N.E.2d 1; *Venizelos, S.A. v. Chase Manhattan Bank* (2d Cir. 1970), 425 F.2d 461, 464-65.

■ The issue in the instant case is whether the invoices and bills of lading presented by Marine Midland to Mount Prospect complied with the terms of the letter of credit. Section 5—114(1) of the UCC (Ill. Rev. Stat. 1979, ch. 26, par. 5—114(1)) deals with an issuer's duty to honor a presentment which complies with the terms of a letter of credit. That section provides:

> "An issuer must honor a draft or demand for payment which complies with the terms of the relevant credit regardless of whether the goods or documents conform to the underlying contract for sale or other contract between the customer and the beneficiary. ***"

In construing this section our supreme court has stated:

> "[S]ection 5—114(1) of the Code [citation] makes it clear that the issuer of the credit has no right to refuse to honor a complying draft or demand. The obligation of the credit is without reference to the compliance of the buyer (customer) or the seller (beneficiary) with the underlying contract. The issuer deals only with documents which must comply with the terms

of the credit. Once compliance is determined, the issuer is not concerned with the quality of the goods shipped or the accuracy of the documents if they are regular on their face." (*Pastor v. National Republic Bank* (1979), 76 Ill. 2d 139, 147-48, 390 N.E.2d 894.)

Thus, a letter of credit is an undertaking independent of any underlying contract, unless the letter of credit provides to the contrary. (76 Ill. 2d 139, 151; *Professional Modular Surface, Inc. v. Uniroyal, Inc.* (1982), 108 Ill. App. 3d 1046, 1049-50, 440 N.E.2d 177; *Stringer Construction Co. v. American Insurance Co.* (1981), 102 Ill. App. 3d 919, 923; *First Arlington National Bank v. Stathis* (1980), 90 Ill. App. 3d 802, 808.) In other words, the issuer deals in documents, not in contract performance. (*Pastor v. National Republic Bank* (1979), 76 Ill. 2d 139, 152; *First Arlington National Bank v. Stathis* (1980), 90 Ill. App. 3d 802, 808.) When the documents presented comply with the conditions specified in the letter of credit, the issuer is authorized and obligated to pay pursuant to the terms of the credit. (*Pastor.*) In this sense, the issuer's function in a letter of credit transaction is basically ministerial. See *Far Eastern Textile, Ltd. v. City National Bank & Trust Co.* (S.D. Ohio 1977), 430 F. Supp. 193, 197.

The UCC, however, does not specify whether strict compliance with the terms of a letter of credit is necessary or whether substantial performance is sufficient. (*Far Eastern Textile, Ltd. v. City National Bank & Trust Co.* (S.D. Ohio 1977), 430 F. Supp. 193, 196; J. White & R. Summers, Uniform Commercial Code sec. 18—6, at 729 (2d ed. 1980); see *First Arlington National Bank v. Stathis* (1980), 90 Ill. App. 3d 802, 814; Ill. Rev. Stat. 1979, ch. 26, par. 5—109(2) (concerning the issuer's obligation to its customer).) The majority rule in the United States appears to hold the beneficiary of a letter of credit to a standard of strict compliance when it is seeking to hold the issuer accountable for failing to honor a draft. (*First Arlington National Bank v. Stathis* (1980), 90 Ill. App. 3d 802, 814-15; *Chase Manhattan Bank v. Equibank* (3d Cir. 1977), 550 F.2d 882, 884; *Courtaulds North America, Inc. v. North Carolina National Bank* (4th Cir. 1975), 528 F.2d 802, 805-06; *Venizelos, S.A. v. Chase Manhattan Bank* (2d Cir. 1970), 425 F.2d 461, 465; *Far Eastern Textile, Ltd. v. City National Bank & Trust Co.* (S.D. Ohio 1977), 430 F. Supp. 193, 196.)[1] As stated

---

[1]In *Far Eastern Textile*, the court provided a rationale for a bifurcated standard, which would require strict compliance with the terms of the letter of credit when the issuer is being sued by the beneficiary for refusing to honor drafts on presentment, but would only require substantial compliance when the issuer is being sued by the customer for wrongful payment. 430 F. Supp. 193, 196-97.

in *Courtaulds*: "[T]he beneficiary must meet the terms of the credit—and precisely—if it is to exact performance of the issuer. Failing such compliance there can be no recovery from the drawee." 528 F.2d 802, 805-06.

Moreover, in ascertaining whether documents presented comply with the terms of a letter of credit, the issuer determines whether the documents comply on their face with the *requirements* of the credit. (*First Arlington National Bank v. Stathis* (1980), 90 Ill. App. 3d 802, 808; Ill. Rev. Stat. 1979, ch. 26, par. 5—109(2).)[2] This is especially so in the instant case because the letter of credit involved here specifically stated: "Except as otherwise expressly stated herein, this Letter of Credit is subject to 'The Uniform Customs and Practice for Documentary Credits [UCPDC]' (1974 Revision), the International Chamber of Commerce Brochure No. 290." Article 7 of the UCPDC provides:

> "Banks must examine all documents with reasonable care to ascertain that they appear on their face to be in accordance with the terms and conditions of the credit. Documents which appear on their face to be inconsistent with one another will be considered as not appearing on their face to be in accordance with the terms and conditions of the credit."

Article 8(c) of the UCPDC provides:

> "If, upon receipt of the documents, the issuing bank considers that they appear on their face not to be in accordance with the terms and conditions of the credit, that bank must determine, on the basis of the documents alone, whether to claim that payment, acceptance or negotiation was not effected in accordance with the terms and conditions of the credit."

In this regard, we observe that the issuer of a letter of credit is not "permitted to read into the instrument the contemplation or intention of the seller [beneficiary] and buyer [customer]." *Courtaulds North America, Inc. v. North Carolina National Bank* (4th Cir. 1975), 528 F.2d 802, 806.

■ In the instant case, the letter of credit, as amended, required that sight drafts drawn under it must be accompanied by "Invoices [and] Bills of Lading *** to Magic Automotive Products of Illinois,

---

[2]Section 5—109(2) of the UCC provides: "An issuer must examine documents with care so as to ascertain that on their face they appear to comply with the terms of the credit but unless otherwise agreed assumes no liability or responsibility for the genuineness, falsification or effect of any document which appears on such examination to be regular on its face." Ill. Rev. Stat. 1979, ch. 26, par. 5—109(2).

Inc., covering shipments to various Magic Automotive Products of Illinois locations in the United States."[3] As noted in the statement of facts, only three of the invoices reflect, on their faces, that they relate to shipments to MAP of Illinois locations in the United States. Applying the aforementioned principles, we must conclude that Marine Midland, as assignee of MAP of New York, failed to comply precisely with the terms of the letter of credit. Since the strict compliance standard was not met, we hold that Mount Prospect was not required to honor the drafts upon presentment.

Marine Midland argues, however, that in *First Arlington*, the appellate court turned away from the traditional standard of strict compliance by holding that reasonable compliance with the terms of a letter of credit entitles a beneficiary to payment. (See *Crocker Commercial Services, Inc. v. Countryside Bank* (N.D. Ill. 1981), 538 F. Supp. 1360, 1362.) Indeed, the *First Arlington* opinion contains language supporting such a conclusion. In that case the court held that an issuing bank was not justified in dishonoring the request of the beneficiary of a letter of credit for payment. (*First Arlington National Bank v. Stathis* (1980), 90 Ill. App. 3d 802, 816.) In reaching this conclusion, the court stated that "the accompanying documents submitted by [the beneficiary] reasonably complied with [the terms of the letter of credit]." (90 Ill. App. 3d 802, 814.) The court further stated:

> "Although the traditional standard in letter of credit transactions is one of strict compliance with the terms of the credit by the party entitled to draw against the letter [citations], a number of courts have held that insignificant variance between the letter of credit requirements and the documents submitted in compliance therewith is permissible [citations]." (90 Ill. App. 3d 802, 814-15.)

Even assuming that this constitutes a new standard of compliance in Illinois, we are of the opinion that the variance here between the terms of the letter of credit and the documents submitted is not insignificant. Accordingly, regardless of whether the standard of compliance in Illinois is strict compliance or reasonable compliance, we hold that Mount Prospect was not required to honor the drafts presented by Marine Midland.

As to the foregoing, there is no genuine issue of material fact,

---

[3]All of the parties to this appeal agree that the letter of credit, as amended on June 27, 1979, is the relevant version of the letter of credit.

and Mount Prospect and MAP of Illinois were entitled to judgment as a matter of law. Accordingly, the order granting summary judgment is affirmed.

Affirmed.

McGILLICUDDY and RIZZI, JJ., concur.