SECURITY STATE BANK OF BASIN,
Wyoming, Appellant (Defendant),

v.

BASIN PETROLEUM SERVICES, INC.,
a Wyoming corporation,
Appellee (Plaintiff).

No. 85–69.

Supreme Court of Wyoming.

Feb. 6, 1986.

George E. Powers, Jr. and Julie Nye Tiedeken of Godfrey & Sundahl, Cheyenne, for appellant.

Joseph E. Darrah, Powell, for appellee.

Before THOMAS, C.J., and ROSE,* ROONEY,** BROWN and CARDINE, JJ.

ROONEY, Justice.

Appellee Basin Petroleum Services, Inc. brought suit to recover on a letter of credit issued by appellant Security State Bank of Basin, Wyoming. This appeal is from a judgment in favor of appellee.

We reverse.

Appellant words the issues on appeal:

"1. Whether the Court erred as a matter of law in determining that Security State Bank of Basin was estopped to require strict compliance with the letter of credit.

"2. If the Court finds that the bank is estopped to require strict compliance because of its actions on previous purchase orders, whether it is then entitled to credits for payments made on previous purchase orders.

"3. Whether incidental damages should have been allowed and whether Security State Bank should have been given credit for machines sold and payments made by Round Bail [sic] Rail, Inc."

On November 12, 1982, appellee entered into an agreement to manufacture hay baling equipment for Round Bale Rail, Inc.

* Retired November 1, 1985.

** Retired November 30, 1985.

(RBRI). The agreement required RBRI to provide appellee with a letter of credit from a qualified banking institution guaranteeing payment for the equipment. In accordance with the agreement, RBRI obtained a letter of credit from appellant on November 18, 1982. The letter provided as follows:

"Please be advised that this irrevocable letter of credit # 005 is issued on behalf of Round Bale Rail, Inc. (hereinafter referred to as RBRI) doing business as Big Valley Interprises in the amount of $100,000. This letter of credit will guarantee payment on purchase orders submitted by RBRI to Basin Petroleum Services, Inc. (hereinafter referred to as Basin). *Each purchase order should carry its own number and refer to this letter of credit dated November 18, 1982.*

"*For the letter of credit to be honored by Security Bank, we must have a copy of each purchase order submitted by RBRI to Basin prior to production commencing on any new machinery.*

"If RBRI fails to pay Basin under the terms of their separate agreement dated September 12, 1982, then upon written request from Basin to Security Bank with reference to the purchase order not paid by RBRI, Security Bank will remit to Basin the amount of that purchase order.

"This letter of credit will expire at midnight on December 31, 1983, and shall cover any and all purchase orders up to a cumulative total not to exceed $100,000.

"Security State Bank reserves the right to cancel this letter of credit at any time with written notice to RBRI, Basin Petroleum Services, Inc. and First National Bank of Powell at their mailing addresses. Such cancellation would not affect or be binding against purchase orders already received by Basin." (Emphasis added.)

Over the next four months, appellee manufactured hay baling equipment for RBRI pursuant to four separate purchase orders. None of the purchase orders strictly complied with the requirements of the letter of credit. They did not refer to the letter of credit. No demand was made by appellee for payment under the letter of credit because appellant extended credit on four occasions directly to RBRI to pay for the equipment listed on the four purchase orders. Then, on June 30, 1983, appellant received a copy of a fifth purchase order dated May 3, 1983, and a demand for payment of the purchase price.

Claiming that appellee had not complied with the requirements of the letter of credit in that a copy of the purchase order was not sent to appellant prior to commencement of production and that the copy of the purchase order which was furnished did not contain a reference to the letter of credit, appellant refused to honor appellee's demand, and, on July 1, 1983, appellant cancelled the letter of credit. Appellee brought suit to recover the $100,000 guaranteed by appellant in the letter of credit.

The trial court found that the issuer of a letter of credit is entitled to demand strict compliance with the conditions stated therein and that none of the five purchase orders strictly complied with the requirements of the letter of credit. However, the trial court found that appellant had failed to object to the lack of compliance in the first four purchase orders, and it concluded that appellant should not now be entitled to insist on strict compliance in the fifth purchase order. It, therefore, held appellant to be estopped from demanding strict compliance with the terms of the letter of credit.

Letters of credit are governed by Article 5 of the Uniform Commercial Code, § 34–21–101 et seq., W.S.1977. Section 34–21–514(a), W.S.1977, provides in part:

"An issuer must honor a draft or demand for payment which *complies* with the terms of the relevant credit * * *." (Emphasis added.)

A substantial number of courts have adopted the rule that strict compliance is required by the statute; e.g., *Tosco Corporation v. Federal Deposit Insurance Corporation*, 723 F.2d 1242 (6th Cir.1983); *Mount Prospect State Bank v. Marine*

*Midland Bank,* 121 Ill.App.3d 295, 76 Ill. Dec. 844, 459 N.E.2d 979 (1983). The rule is based on the belief that:

" 'If courts deviate from the rule of strict compliance and insist in certain undefined situations that banks make payments notwithstanding the fact that the beneficiary failed to comply with the terms stipulated in the letter of credit, the certainty that makes this device so attractive and useful may well be undermined, with the result that banks may become reluctant to assume the additional risks of litigation.' " *First National Bank of Council Bluffs v. Rosebud Housing Authority,* Iowa, 291 N.W.2d 41, 45 (1980), quoting from *Insurance Company of North America v. Heritage Bank,* 595 F.2d 171, 176 (3rd Cir.1979).

■ Although strict compliance is the majority rule, at least two courts have taken the position that substantial or reasonable compliance is sufficient. *First National Bank of Atlanta v. Wynne,* 149 Ga.App. 811, 256 S.E.2d 383 (1979); *First Arlington National Bank v. Stathis,* 90 Ill. App.3d 802, 46 Ill.Dec. 175, 413 N.E.2d 1288 (1980). These courts rely on the proposition that the requirement of rigid adherence to the conditions of a letter of credit must be balanced against the need for reasonable flexibility in commercial transactions. *First National Bank of Atlanta,* supra.

We agree with the majority of courts. To adopt a rule which becomes a vehicle for purely subjective judgments as to that which constitutes compliance would be inconsistent with the need to maintain a high level of predictability in commercial transactions. Requirements placed in a letter of credit by the parties must be taken to express the intent of the parties to anticipate compliance with them.

The trial court made a factual finding that there was not strict compliance with the letter of credit in this case, but it then held that appellant was estopped to demand compliance with the requirements of the letter of credit. It based this holding on the fact that appellant raised no objection to the alleged lack of compliance throughout its course of dealings with appellee. The record further demonstrates that appellant was fully aware of the purchases made by RBRI from appellee and, in fact, independently extended credit to RBRI to facilitate payment for those purchases, and that despite this knowledge and involvement, appellant raised no objection to the fact that it did not receive copies of each purchase order.

We have said that for estoppel to apply it must be shown: (1) that the party asserting estoppel lacked the knowledge of the facts; (2) that he was without means to discover them; (3) that he relied upon the actions of the parties sought to be charged; and (4) that he changed his position in reliance thereon. *Roth v. First Security Bank of Rock Springs, Wyoming,* Wyo., 684 P.2d 93, 96 (1984); *Cheyenne Dodge, Inc. v. Reynolds and Reynolds Company,* Wyo., 613 P.2d 1234 (1980).

■ The facts here do not satisfy these elements and therefore are not sufficient to support the application of estoppel. Appellee was not without knowledge of the facts. Appellant and appellee possessed equal knowledge as to the requirements of the letter of credit. Both parties knew that payment pursuant to the letter of credit was conditioned on receipt by the bank of a copy of each purchase order. In addition, while appellee may have relied on what is perceived as appellant's acceptance of less than full compliance with the letter of credit, there is no evidence that it changed its position because of that reliance. *Garlach v. Tuttle,* Wyo., 705 P.2d 828 (1985). The trial court erred in finding appellant estopped from demanding compliance.

Reversed.

CARDINE, Justice, dissenting, with whom ROSE, Justice, Retired, joins.

After trial to the court, appellee, Basin Petroleum Services, Inc., was awarded judgment against Security State Bank of Basin upon its letter of credit in the amount of $100,000 plus interest, damages,

and costs. The bank appeals from the judgment contending that it is not liable because there was not strict compliance with requirements and terms of the letter of credit.

The letter of credit, dated November 18, 1982, was provided at Basin's request. The letter guaranteed payment for hay machines manufactured by Basin and sold to Round Bale Rail, Inc. (RBRI), a corporation, which at the time was obtaining financing from the bank. RBRI was a recently formed corporation. Basin required this irrevocable letter of credit to insure payment for the machines sold to RBRI.

As stated by the trial court in its decision letter:

"The Letter of Credit, by its terms, required that a copy of any purchase order must be supplied to the Defendant prior to Plaintiff's commencing any production and that the purchase order should carry its own number and refer to the Letter of Credit. The testimony revealed that there were five separate purchase orders, that Defendant maintained that it received copies of only the first two prior to production and did not receive a copy of the fifth one * * * until June 30, 1983 * * *."

The trial court found from the testimony that appellee had supplied the bank with an invoice and purchase order for the 25 hay balers involved in this case (the fifth purchase) which, in the judgment of the court, "satisfied this requirement [sales price] of the Letter of Credit."

There were five separate purchases of machinery by RBRI from appellee. The bank admits that there was substantial compliance with the requirements of the letter of credit with respect to the first two purchases. The bank, its customer RBRI, and appellee were in personal contact with respect to the next two purchases, and the bank was aware of the purchases, the amount that would be invoiced for them, had loaned money to its customer RBRI, and did not require more of appellee in their dealings. The bank knew all there was to know about the transactions and would have been in no better position if it had insisted upon strict compliance with the terms of the letter of credit. Accordingly, the bank did not insist upon strict compliance.

The fifth purchase, the one involved in this case, was pursuant to a purchase order and invoice, both of which were delivered to the bank on June 30, 1983. The next day the bank gave notice of revocation of the letter of credit.

It is clear from the facts, and the court found after trial, that initially there was compliance with the terms of the letter of credit; that the parties continued doing business and the bank did not thereafter require compliance with respect to the next two purchases of machines; that, with respect to the fifth purchase, there was compliance with the letter of credit; and that the bank then attempted revocation. The trial court held:

"The Defendant in this instance is likewise estopped to rely on any failure to strictly comply with the terms of the Letter of Credit. A purchase order was submitted to Defendant prior to the cancelation of the Letter of Credit and the Plaintiff otherwise substantially complied with the terms of the Letter."

In support of its decision, the trial court quoted *Schweibish v. Pontchartrain State Bank*, La.App., 389 So.2d 731, 737 (1980):

"It is well settled * * * that when a party with full knowledge of the facts has acted or conducted himself in a particular manner, he cannot afterward assume a position inconsistent with his previous behavior to the prejudice of one who has acted in reliance on such conduct.

"The defendant bank was well acquainted with the legal and commercial practice applicable to letters of credit, and it was entitled to demand strict compliance with the conditions stated in the letters of credit issued to plaintiff. Nevertheless it chose not to require strict compliance with these conditions so long as mere substantial [compliance] did not conflict with the bank's own interest.

However, after completing two or three transactions involving issuance of credits for International Metals to fund a sale from plaintiff, the bank assumed a position totally inconsistent with its prior actions by insisting on strict compliance with the conditions of the credit. Whether defendant received no consideration or anticipated receiving no consideration, its previous course of action in demanding only substantial [compliance] with conditions of earlier letters of credit caused plaintiff to act in reliance on the anticipation that the bank would not suddenly insist on exact and precise requirements with the conditions of the credit. While the bank can impose conditions in the credit and demand complete compliance with them, it cannot, in a series of dealings based upon credits, arbitrarily select those credits which must conform to the requirements therein stated and those which may be paid without complete compliance. If it chooses to demand complete compliance with the stated conditions at a later date, its future intent should and must be conveyed in time for the beneficiary to comply therewith." (Footnote omitted.)

In this case the bank, with full knowledge of the facts and the requirements of its letter of credit, conducted business over a period of time with its customer and with appellee engaging in a course of conduct that was acted upon by appellee; and the bank cannot now assume a position inconsistent with its previous behavior to the prejudice of appellee. I agree with the trial court, who listened to the testimony and observed the witnesses, that the bank is estopped by its course of conduct from now demanding strict compliance with the terms of the letter of credit. I also agree with the trial court that there was substantial compliance and that judgment should be awarded to appellee.

This court, in its majority opinion, recites all of the elements necessary to estoppel when it states:

"The record further demonstrates that appellant was fully aware of the purchas-

es made by RBRI from appellee and, in fact, independently extended credit to RBRI to facilitate payment for those purchases, and that despite this knowledge and involvement, appellant raised no objection to the fact that it did not receive copies of each purchase order."

This court then states that appellee does not meet the requirements of estoppel because "[a]ppellee was not without knowledge of the facts." On the contrary, appellee did not have knowledge of the fact that the bank, with full knowledge of the purchases, transactions, and financial condition of RBRI, would engage in a course of conduct in its doing business with appellee which indicated that strict compliance with the terms of its letter of credit was not required, that the bank would then suddenly, without notice or warning, adopt a totally inconsistent position, demand strict compliance, and attempt to revoke the irrevocable letter of credit. No one claims that appellee was aware of the fact that the bank would act in this manner. This is the reason that estoppel ought to properly apply in this case.

I would affirm the decision of the trial court.