BANK OF MONTREAL, Plaintiff,

v.

FEDERAL NATIONAL BANK AND TRUST COMPANY OF SHAWNEE, a National Bank of Oklahoma, and Harris Trust & Savings Bank, an Illinois State Bank, Defendants,

and

Barton Valve Company, Inc., Intervenor.

No. CIV 83–261–R.

United States District Court, W.D. Oklahoma.

May 30, 1984.

Burck Bailey and Richard F. Campbell, III, Fellers, Snider, Blankenship, Bailey & Tippens, Oklahoma City, Okl., for plaintiff.

Ronny D. Pyle, Pyle & Poarch, Norman, Okl., James A. Cherney, Latham & Watkins, Hedlund, Hunter & Lynch, Chicago, Ill., Bruce W. Day and William B. Federman, Day & Timmons, Oklahoma City, Okl., for defendants.

## ORDER

DAVID L. RUSSELL, District Judge.

The Plaintiff, Bank of Montreal, brought this action to enforce a letter of credit against the Defendants, Federal National Bank and Trust and Harris Trust and Savings Bank. Barton Valve was permitted to intervene as a party defendant and promptly filed a counterclaim for declaratory judgment against the Bank of Montreal. The case is presently at issue on cross Motions for Summary Judgment on the Plaintiff's claim.

The relevant facts are not in dispute. Barton Valve sought financial aid from the Bank of Montreal for its business associates Blow Out Products, Ltd., Blow Out Prevention Equipment Services, Ltd, and Mattco Machine, Ltd., known collectively as the "Blow Out Companies." To obtain from the Bank of Montreal advances to the Blow Out Companies, Barton Valve caused Federal National to issue a letter of credit to the Bank of Montreal in the amount of one million dollars. As these two banks were not associates in the industry, Harris

was secured as a confirming bank at the request of the Bank of Montreal.

Irrevocable Letter of Credit No. 621 was a deceptively simple document consisting of only three paragraphs. The first paragraph purported to establish the letter of credit, noting that it was issued "[a]t the request of Barton Valve Company, Inc. and relative to [Bank of Montreal's] advances to Blow Out Products, Ltd., Blow Out Prevention Equipment Services, Ltd., and Mappco Machinery, Ltd." The second paragraph was the so-called "certification clause", and was comprised of two subparagraphs, each of which stated a condition precedent to Federal National's duty to pay drafts on the letter of credit. The first subparagraph, designated as A, required a signed statement that proceeds of the draft would "be applied in repayment of ... advances to Blow Out Prevention, Ltd., Blow Out Prevention Equipment Services, Ltd., and Mappco Machinery, Ltd." The second subparagraph, B by designation, required the Bank of Montreal to make an irrevocable assignment to Barton of all security taken for the previously mentioned advances. The last full paragraph recited the date and origin of the letter or credit.

Relying on this letter and the confirmation, the Bank of Montreal made advances to the Blow Out Companies in excess of one million dollars. On June 14, 1982, the Bank attempted to draw on the letter of credit from Harris, enclosing a statement that the proceeds of the draft would be applied in repayment of advances to Blow Out Products, Ltd. Also enclosed were assignments of security to Barton Valve, with a statement that the assignments conveyed all security taken for the advances. Harris refused to honor the draft for several reasons, most notable of which was the assertion that Blow Out Products, Ltd, was not among the companies listed in subparagraph A.

The Bank of Montreal then attempted to draw on the letter of credit from Federal National. On January 24, 1983, the Bank forwarded its statement that the proceeds would be applied in repayment of advances to Blow Out Products, Ltd., including an explanation that subparagraph A of the letter of credit mistakenly referred to that company as Blow Out Prevention, Ltd. The January 24 letter to Federal National also recited the assignment of security to Barton Valve, noting that the supporting documents were in the possession of Harris. Federal National refused to honor the draft, noting that Blow Out Products was not among the companies listed in subparagraph A, and that no assignment had been made of security taken from Blow Out Prevention, Ltd.

On February 17, 1983, the Bank of Montreal again attempted to draw on the letter of credit from Federal National. The Bank further clarified that subparagraph A was erroneously drafted in that Blow Out Prevention, Ltd. was substituted for the intended Blow Out Products, Ltd. The Bank also noted that Blow Out Prevention, Ltd. did not exist, and that Barton Valve could verify these facts. Nevertheless, Federal National again refused to honor the draft, stating that Blow Out Products, Ltd. was not among the companies listed in subparagraph A. The written refusal also recited the rather cryptic objection that the security mentioned in subparagraph B had not been assigned to Barton Valve.

Both sets of litigants feel that this set of facts entitles them to summary judgment on the Plaintiff's claim. The Defendants argue that their dishonors were proper because the Plaintiff was not in strict compliance with conditions specified in the letter of credit. The Plaintiff argues, however, that had subparagraph A been properly drafted, its performance would have been sufficient compliance to obtain payment of the draft.

It is true that a party issuing a letter of credit is not obliged to honor drafts thereon unless the conditions in the letter are satisfied with strict compliance. *See, e.g., Venizelos v. Chase Manhattan Bank*, 425 F.2d 461, 465 (2d Cir.1970). This is the so-called "New York Rule", and it is widely accepted in jurisprudence relevant to letters of credit. *See Far Eastern Textiles, Ltd. v. City*

*National Bank & Trust Co.*, 430 F.Supp. 193, 195 (S.D.Ohio 1977). Thus, the Defendant banks would be justified in their dishonor of the drafts if the Plaintiff failed to render strict compliance with the terms of the letter of credit.

The issue of strict compliance, presumably an easy matter to determine in most cases, is complicated by the ambiguity of the letter of credit in this case. The establishment clause, the first paragraph, gives a list of the companies to whom advances are expected. The certification clause, subparagraph A of the second paragraph, lists the companies about whom documentation is required to draw on the letter of credit. One would reasonably expect that the two lists would be identical, since the first anticipates that advances will be made and the second outlines the procedure to obtain repayment of the advances. However, the lists are not identical; the certification clause differs from the establishment clause in that Blow Out Prevention, Ltd. is substituted for Blow Out Products, Ltd.

The Defendants seek to avoid this ambiguity by asserting that, as the certification clause is controlling, the discrepancy is irrelevant. They argue that subparagraph A can be satisfied only if the Bank of Montreal provides documentation relative to Blow Out Prevention, Ltd., Blow Out Prevention Equipment Services, Ltd., and Mappco Machinery, Ltd.[1] Under this theory the Defendant banks would be justified in dishonoring the drafts because the Plaintiff's documentation concerned Blow Out Products, Ltd., a company not listed in subparagraph A.

The problem with this construction of the letter of credit is that it exalts form over substance, with incongruous results. If the Court were to adopt the Defendants' argument, the Bank of Montreal would be unable to obtain repayment of advances made to Blow Out Products, Ltd. despite the clear language of the first paragraph that the letter of credit was issued to obtain such advances. Further, under the Defendants' theory, the Bank of Montreal could draw on the letter of credit by certifying that it had advanced funds to Blow Out Prevention, Ltd. despite the fact that the first paragraph of the letter of credit does not anticipate advances to that company. Indeed, the uncontroverted evidence establishes that Blow Out Prevention, Ltd. does not exist. These unlikely results obtainable under the Defendants' proposed construction militate against its adoption by the Court.

A more reasonable construction of the letter of credit is that it must be read as a whole, taking the certification clause in conjunction with the establishment clause. Viewed in this light, the substitution of Blow Out Prevention, Ltd. for Blow Out Products, Ltd. in the certification clause is clearly a draftsman's error.[2] Thus, the letter of credit would be read to require payment of a draft accompanied by a certification that the proceeds would be applied in repayment of advances made to Blow Out Products, Ltd.

The Court is satisfied that the latter construction is the one appropriate in this case. In construing a letter of credit in *Liberty National Bank & Trust Co. v. Bank of America*, 218 F.2d 831 (10th Cir.1954), the Court stated:

> Where the language contained in an agreement is contradictory, obscure, or ambiguous, or where the meaning of an agreement is doubtful, so that the contract is fairly susceptible of two constructions, one of which makes it fair, customary, and such as prudent men would naturally enter into, while the other makes it inequitable, unusual, or such as reasonable men would not be likely to enter into, the former interpretation must be preferred to the latter.

---

1. Another discrepancy in the letter of credit is that in both the establishment clause and the certification clause Mattco Machine, Ltd., one of the Blow Out Companies, is erroneously called Mappco Machinery, Ltd. However, this discrepancy is not relevant to the case.

2. This conclusion is reinforced by the obvious error previously noted *supra* at footnote 1.

*Id.* at 840 [citations omitted]. This rule clearly indicates that the Court must reject the Defendants' proposed construction of the letter of credit, which denies repayment of advances to authorized companies but permits repayment of advances made to a non-existent company. This construction is inequitable and unusual, and the Bank of Montreal would not have been likely to enter into the agreement with this understanding. Thus, the Court finds that the substitution of Blow Out Prevention, Ltd. for Blow Out Products, Ltd. was a draftsman's error, and that the Bank of Montreal can obtain repayment under the letter of credit for advances made to Blow Out Products, Ltd.[3] This construction is fair, and is no doubt the intention of the parties to the letter of credit. The ultimate rule of construction is that the intent of the parties controls the nature of the agreement. *Liberty National Bank*, 218 F.2d at 840. In any event, the ambiguity in the letter of credit must be resolved against the issuing banks. *Venizelos*, 425 F.2d at 465.

Having concluded that the latter construction is the appropriate one in this case, the Court is satisfied that the Bank of Montreal met the condition specified, albeit confusingly, in subparagraph A. That section required an affirmation that the proceeds of the draft would be applied to repayment of advances to the authorized companies, one of which was Blow Out Products, Ltd. Thus, the Defendants' dishonor of the drafts is not justifiable under this argument.

◼ As the Defendants' Motion for Summary Judgment hinged on their construction of the letter of credit, that motion is denied. There remains the Plaintiff's Motion for Summary Judgment, which is much stronger given the Court's construction of the letter of credit. Nevertheless, the Defendants argue that summary judgment is inappropriate because the Bank of Montreal did not satisfy the conditions stated in subparagraph B of the letter of credit. Under this argument, the Defendant

banks' dishonor might yet be found appropriate on the facts of this case.

This argument focuses on the requirement in subparagraph B that the Bank of Montreal make an "irrevocable assignment of ... security on the assets and collateral and security interest obtained ... relative to advances ..." made to the authorized companies. In each of the attempts to draw, the Bank of Montreal recited its irrevocable assignment of all security, and the first attempt was accompanied by individual documents making the assignments. Nevertheless, the Defendants assert that the condition in subparagraph B was not met by these assignments. They argue that the underlying agreement between Barton Valve and the Bank of Montreal required the Bank to obtain a debenture from the Blow Out Companies to be assigned to Barton Valve. Because this debenture was never obtained, they argue, the Bank did not make the requisite assignment of security under subparagraph B.

The Court finds this proposition without merit. The letter of credit in this case was the sole contract between the Bank of Montreal and the issuing banks, and it was independent of any alleged contract between Barton Valve and the Bank of Montreal. *See Venizelos*, 425 F.2d at 465; *Savage v. First National Bank & Trust Co.*, 413 F.Supp. 447, 451 (N.D.Okla.1976). The issue to be determined is whether the Bank of Montreal satisfied the condition specified in subparagraph B, not whether it performed an alleged underlying contract with Barton Valve. If the Bank satisfied that condition, the issuing parties would be obliged to pay the drafts regardless of whether the Bank performed its contract with Barton. *See, e.g., Harvey Estes Construction Co. v. Dry Dock Savings Bank*, 381 F.Supp. 271, 274 (W.D.Okla.1974).

The Court is satisfied that the Bank of Montreal did meet the condition specified in subparagraph B. That section of the letter of credit required the Bank to assign to Barton Valve all its security taken for the advances. The documents presented by

**3.** *Id.*

the Bank clearly do this. There is no argument that the Bank took the debenture from the Blow Out Companies and then failed to assign it; indeed, the only evidence presented indicates that the Bank never took the debenture as security. Such a result may constitute breach of the contract between the Bank and Barton, but it does not constitute failure of the condition in subparagraph B of the letter of credit issued by the Defendant banks to the Bank of Montreal.

Thus, as the Bank of Montreal satisfied all the conditions expressed in the letter of credit, the issuing bank and the confirming bank were obliged to pay the drafts. *Harvey Estes Construction*, 381 F.Supp. at 274. The uncontroverted evidence is that they did not, and the Plaintiff's Motion for Summary Judgment is therefore granted.

One remaining matter for the Court's consideration is the Defendant Barton Valve's counterclaim for declaratory judgment. That counterclaim seeks judicial declarations that the Bank of Montreal is not entitled to draw on the letter of credit. It is the Court's opinion that such declaratory relief is precluded by the Court's rulings previously announced in this Order. Accordingly, summary judgment is granted in favor of the Bank of Montreal on the Defendant Barton Valve's counterclaim.

In summary, the Defendants' Motion for Summary Judgment is denied. The Plaintiff's Motion for Summary Judgment is granted. The Plaintiff is also granted summary judgment on the Defendant Barton Valve's counterclaim.