623 So.2d 520 (1993)
OCEAN BANK OF MIAMI, Appellant,
v.
LA ESQUINA PRESIDENCIAL, INC., et al., Appellees.
No. 92-380.
District Court of Appeal of Florida, Third District.
June 1, 1993.
Rehearing Denied October 5, 1993.
Holland & Knight, and Daniel S. Pearson and Scott B. Newman and R. Bart Totten, Miami, for appellant.
Mershon, Sawyer, Johnston, Dunwody & Cole, and Carlos M. Sires, Miami, for appellees.
Before SCHWARTZ, C.J., and HUBBART and FERGUSON, JJ.
PER CURIAM.
Affirmed. Braun v. Intercontinental Bank, 466 So.2d 1130 (Fla. 3d DCA 1985); Fidelity Nat'l Bank of South Miami v. Dade County, 371 So.2d 545 (Fla. 3d DCA 1979); Orr v. Trask, 464 So.2d 131 (Fla. 1985).
SCHWARTZ, C.J., and HUBBART, J., concur.
FERGUSON, Judge (dissenting).
Entombed by the majority's affirmance without an opinion is a lively question bearing on the risks assumed by a commercial bank which issues a letter of credit. We are called upon to decide whether an issuing bank is obligated to heed an instruction of its customer, which has defaulted on its obligation to the beneficiary bank, to dishonor the beneficiary bank's demand for payment on a standby letter of credit solely because of an ambiguity in the credit instrument. A quick review of basic letter of credit law aids an understanding of the question presented.
There are three separate and distinct contracts in transactions involving letters of credit: (1) the underlying contract between the customer and the beneficiary; (2) the reimbursement agreement between the customer and the customer's bank as issuer of the letter; and (3) the letter of credit itself between the issuer and the beneficiary. Cargill, Inc. v. Sunlight Foods, Inc., 586 So.2d 366, 367 (Fla. 3d DCA 1991); Braun v. Intercontinental Bank, 466 So.2d 1130, 1132 (Fla. 3d DCA 1985). A cardinal principle of credit law is that each contract is independent of the other. John F. Dolan, The Law of Letters of Credit § 2.01 (2d ed. 1990).
Two of the cases relied on by the majority are actions between the issuing bank and the beneficiary bank on the letter of credit. The strict compliance standard applied in those cases is not applicable in an action between the bank and its customer on a simple reimbursement contract. Byron V. McCullough, Letters of Credit, § 3.05(7)(d) (1990). Transamerica Delaval, Inc. v. Citibank, N.A., 545 F. Supp. 200 (S.D.N.Y. 1982); Data Gen. Corp. v. Citizens Nat'l Bank, 502 F. Supp. 776 (D.Conn. 1980); Far E. Textile, Ltd. v. City Nat'l Bank & Trust Co., 430 F. Supp. 193 (S.D.Ohio 1977). Assuming, for the sake of argument, that the strict compliance standard was applicable in an action on the reimbursement agreement, the presence of an ambiguity in the letter of credit did not entitle the customer to absolution of its legal debt; it required the court to discern the intent of the parties and, in the interpretive process, to consider customary practices and equitable principles.

Facts
La Esquina applied to Ocean Bank for a $400,000 standby letter of credit. The credit *521 was to cover a commitment for a construction and mini-permanent loan from Sun Bank on a condominium and mixed-use project. The application referred to a $4.3 million promissory note from La Esquina to Sun Bank to be partially secured by the letter of credit, and directed Ocean Bank to pay Sun Bank upon presentation of a sight draft and a notarized certificate giving notice that La Esquina was in default on its loan from Sun Bank. Another paragraph in the application, central to the controversy, provided that the letter of credit issued by Ocean Bank:
[S]hall be valid until one year from issuance and shall thereafter be automatically renewed for a successive one year period upon the anniversary of its issue unless at least thirty (30) days prior to any such anniversary date we notify you in writing that we elect not to so renew this letter of credit.
As part of the application process, Ocean Bank and La Esquina executed a reimbursement agreement which set forth the parties' rights and obligations regarding the letter of credit transaction. The reimbursement agreement obligated Ocean Bank to "accept or pay any draft presented to it, regardless of when drawn and whether or not negotiated, if such draft, the other required documents and any transmittal advice are dated on or before the expiration date of the credit." [Emphasis added]. It also detailed La Esquina's reimbursement obligations to Ocean Bank.
On July 12, 1988, Ocean Bank issued an irrevocable standby letter of credit naming Sun Bank as beneficiary. The credit fixed July 12, 1989, as the expiration date and date for presentation of documents. It also included an automatic renewal clause identical to the clause set forth in the application. Under a separate section entitled "Special Instructions," the standby letter of credit provided that "[d]ocuments must be presented for negotiation at the counters of Ocean Bank no later than July 12, 1989." By request of La Esquina, the standby letter of credit was renewed for an additional one-year period through July 12, 1990. La Esquina acknowledged the renewal and paid Ocean Bank a $4,000 renewal fee.
On March 16, 1990, Sun Bank notified Ocean Bank, in proper form, of La Esquina's default and requested payment. Over La Esquina's objections, Ocean Bank paid Sun Bank according to the letter of credit. Pursuant to the application and reimbursement agreement, it then applied the collateral held in La Esquina's account against the sum paid to Sun Bank. Because the pledged collateral was insufficient to satisfy La Esquina's debt to Ocean Bank, Ocean Bank sued La Esquina on the reimbursement agreement to collect the balance owed. La Esquina filed a counterclaim alleging that Ocean Bank wrongfully paid on the standby letter of credit.
According to La Esquina, although the letter of credit was renewed for an additional year commencing July 13, 1989, the renewal was meaningless because the last day for presentation of documents, initially stated as July 12, 1989, was not expressly extended. La Esquina's argument, in other words, is that proof of a breach of the contract, which breach occurred during the period of the renewed contract, had to be presented prior to the effective date of the new contract.[1] Under that interpretation Sun Bank, as the beneficiary, could never demand payment under the renewed letter of credit. The trial court obviously agreed in adjudging that Ocean Bank had acted at its peril in honoring Sun Bank's demand for payment pursuant to the letter of credit.[2]

*522 I.
In entering judgments for La Esquina, the trial court determined that the dispute between Ocean Bank and La Esquina was governed not by the contractual agreement between them, but instead was controlled by the terms and interpretive rules of the standby letter of credit. That dispositive ruling was erroneous.
An established principle of commercial law is that the credit does not govern the relationship between the issuer and the customer. The customer is not a party to the letter of credit and has no rights under it. Dolan, supra at 7-2; Henry Hartfield, Letters of Credit 15 (ALI-ABA Handbook 1979). The rights and obligations of the issuer and the customer are governed by the agreement between the two, typically, the application and reimbursement agreement. 50 Am.Jur.2d Letters of Credit § 19 (1970); Fla. Stat. Ann. § 675.5-109 U.C.C. Comment 1 (the issuer's obligation to the customer is based on the agreement between the two). The application and reimbursement agreement is independent of the letter of credit  a significant factor in the issuer/customer relationship. Dolan, supra, at 7-3. In this case, the reimbursement agreement obligated Ocean Bank to "accept or pay any draft presented to it regardless of when drawn and whether or not negotiated, if such draft, the other required documents and any transmittal advise are dated before the expiration of the Credit." It is undisputed that Ocean Bank complied with that provision. Under the rule of independence, between the reimbursement agreement and the letter of credit, the credit, alone, cannot serve as the source of the customer's claim or defense. Dolan, supra, at 9-27.
This action was brought on the application and reimbursement agreement. Focusing on the letter of credit, the court applied a strict compliance test to the transaction. The strict compliance rule applies to letter of credit contracts but not to application agreements. Id. at 9-29. The strict compliance test recognizes the unique nature of credits and the ministerial role of the issuer in its obligation to the beneficiary. In contrast, the credit application and reimbursement agreement is an ordinary contract where a substantial compliance test, the normal contract rule, is applied to assess performance. Id.; McCullough, supra, at 3-112. See also Data Gen. Corp. v. Citizens Nat'l Bank, 502 F. Supp. 776 (D.Conn. 1980); Far E. Textile, Ltd. v. City Nat'l Bank & Trust Co., 430 F. Supp. 193 (S.D.Ohio 1977).

II.
Even if La Esquina's obligation to reimburse Ocean Bank was dependent on strict compliance with the terms of the standby letter of credit, strict compliance principles would not have precluded the court from resolving the patent ambiguity created by the renewal clause and the requirement to make presentments on some date before the renewal was effective.[3] Strict compliance is not rendered impossible by an ambiguity in the letter of credit. The same general principles of interpretation which apply to ordinary contracts govern letters of credit. Like all other contracts they must be construed in a manner which is most probable and natural under the circumstances, so as to give effect to the mutual intention of the parties. 50 Am.Jur.2d Letters of Credit § 13 (1970); 45 A.L.R. 1382, 1387; 53 A.L.R. 57, 59. Thus, where a patent ambiguity is found in the credit a court must first discern the intentions of the parties. Only afterwards may it determine whether there has been compliance with its terms. See Bank of Montreal v. Federal Nat'l Bank and Trust Co., 622 F. Supp. 6 (W.D.Okl. 1984).
Authorities recognize that credits are usually framed with less formality than other contracts, thus a disputed letter should not *523 be interpreted with "technical nicety." 50 Am.Jur.2d supra, at 409. Where ambiguities are created by isolated phrases or paragraphs, a court may examine the whole contract to discern the intent of the parties. Lalow v. Codomo, 101 So.2d 390 (Fla. 1958); Jerry's, Inc. v. City of Miami, 591 So.2d 1000 (Fla. 3d DCA 1991); Rod-Lyn Corp. v. DeBelay, 231 So.2d 233 (Fla. 3d DCA), cert. denied, 237 So.2d 754 (Fla. 1970). The same rule applies in construing letters of credit:
Where a letter of credit is fairly susceptible of two constructions, one of which makes it fair, customary and one which prudent men would naturally enter into, while the other makes it inequitable, the former interpretation must be preferred to the latter and a construction rendering the contract possible of performance will be preferred to one which renders its performance impossible or meaningless.
Venizelos, S.A. v. Chase Manhattan Bank, 425 F.2d 461, 466 (2d Cir.1970); see also Liberty Nat'l Bank & Trust Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n, 218 F.2d 831 (10th Cir.1955); Bank of Montreal v. Federal Nat'l Bank & Trust Co., 622 F. Supp. 6 (W.D.Okl. 1984).
I would reverse and remand with instructions to enter a judgment for the appellant.
NOTES
[1] To renew a contract means to begin again or continue in force the old contract. Black's Law Dictionary 1296 (6th ed. 1990) (citing East Bay Union of Machinists Local 1304 v. Fibreboard Paper Prod. Corp., 285 F. Supp. 282, 287 (N.D.Cal. 1968)).
[2] The commercial cruelty of La Esquina's position is further illustrated by logical extension. If La Esquina had renewed the agreement for five consecutive years, as is provided for, before first defaulting on June 1, 1994, Sun Bank's presentment and demand for payment made on the same date would have been void because it was not made by July 12, 1989. Consequently, the $400,000 paid by Ocean Bank to cure La Esquina's default on its obligation to Sun Bank would be a windfall to La Esquina, at the expense of Ocean Bank, because, as contended, the court is paralyzed to construe the contract so that the latest presentment date coincides with the expiration date of the renewed letter of credit  as was intended by the parties.

If La Esquina's desired result was mandated in this case there might be a host of new converts to Mr. Bumble's school of thought that "the law is a ass  a idiot." Charles Dickens, Oliver Twist 377 (1912). Fortunately, the trial court simply applied the wrong law.
[3] In fact the court conceded that if it were permitted to interpret the credit, "[rules of] interpretation ... would clearly indicate that the words `or prior to any extended date pursuant to the above renewal provision' would be implied" to allow presentation of documents at any time prior to the credit's expiration date.